Clifford C. **TERRY**

v.

The **UNITED STATES.**

No. 13–73.

United States Court of Claims.

June 19, 1974.

Don Bradshaw, Houston, Tex., attorney of record, and Hugh J. Plummer, Houston, Tex., for plaintiff.

Rose E. Adewale-Mendes, Washington, D. C., with whom was Acting Asst. Atty. Gen., Irving Jaffe, for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

SKELTON, Judge:

Prior to March 31, 1969, the plaintiff, Clifford C. Terry, was employed by the United States Post Office Department as a Distribution and Window Clerk in Houston, Texas. He was a nonprobationary member of the competitive civil service and, as such, was entitled to the protection of the Lloyd-LaFollette Act, 5 U.S.C. § 7501 (1970). Such protection included the right to be discharged from employment only for such cause as would promote the efficiency of the civil service. He was also entitled to rely on the administrative regulations issued by the Post Office Department and the Civil Service Commission (CSC) which pertained to the discharge of Federal employees with his status.

On March 17, 1969, a Postal Inspector conducted an audit of the plaintiff's cash account which revealed a shortage of approximately $101 in the plaintiff's fixed credit funds. Just prior to the audit, but after the plaintiff knew an audit was about to commence, the Inspector observed the plaintiff attempting to place money from his pocket into his cash drawer. The Inspector told the plaintiff to put the money back into his pocket. After the audit, the Inspector questioned plaintiff about the shortage. Plaintiff then left the premises and returned with two money order receipts.

After further questioning, plaintiff signed a written statement which had been prepared by the Postal Inspector. Part of the statement admitted that the plaintiff had issued for his personal account two money orders in the total amount of $50 and had placed in his cash account only $20 as payment therefor. The money order receipts which the plaintiff had brought to the premises corroborated the written admission.

By letter dated March 20, 1969, the Postal Inspector charged plaintiff with misuse of official funds and notified him that disciplinary action, including discharge from employment, was being proposed. The charge read as follows:

You are charged with misuse of official funds while employed as a clerk in the South Houston, Texas post office on March 3, 1969, in that you issued Money Order No. 7,488,422,434 in the amount of $15.00 with fee of 35¢, and Money Order No. 7,488,472,435 in the amount of $35.00 with fee of 35¢ for your personal use and placed only $20.00 in your cash drawer for these two money orders. You converted $30.70 of fixed credit funds to your personal use to account for these two money orders at the close of business on March 3, 1969.

The plaintiff was given ten days within which to reply.

By letter dated April 24, 1969, the Regional Director of the Post Office Department advised plaintiff that the charge against him was supported by the fact of the shortage in his fixed credit and his initial explanation for the

shortage, and that he was therefore discharged from employment. The plaintiff appealed the decision through the agency appellate system. After conducting a hearing, the Post Office Department issued its appellate decision in a letter dated November 21, 1969. The decision sustained the charge against the plaintiff and stated that his removal would serve the best interest of, and promote the efficiency of the Post Office Department. The letter also advised the plaintiff of his right to appeal to the CSC.

Plaintiff appealed the agency decision to the Dallas Regional Office of the CSC. On February 26, 1970, the Regional Office held a hearing at which the plaintiff, the investigating Postal Inspector, and the South Houston Postmaster testified. The Regional Office concluded that the evidence supported the agency's charge, that the plaintiff's removal was processed in accordance with required procedures, and that the agency's action was, therefore, proper. The CSC Board of Appeals and Review (BAR) affirmed the decision of the Regional Office on September 9, 1970. There is no doubt that the most damaging evidence upon which the Regional Office and the BAR relied in reaching their decisions was the plaintiff's written statement of March 17, 1969.

Plaintiff filed his petition in this court against the United States on February 5, 1973. He asks that the defendant be ordered to reinstate him to his former position and to pay him all back pay from March 31, 1969, until reinstatement. The case is before us on cross-motions for summary judgment and is ready for disposition on facts which are undisputed. The plaintiff also contends, as an alternative to his motion for summary judgment, that summary judgment for the defendant is improper because genuine fact issues are involved which must be resolved by this court. The arguments of the parties in support of their respective positions are stated below.

The defendant's first argument in support of its motion for summary judgment concerns the effect of the Postal Reorganization Act, 39 U.S.C. § 101 et seq. (1970), on this court's jurisdiction over claims by discharged employees of the former United States Post Office Department. The Postal Reorganization Act established the United States Postal Service (Postal Service) to replace the U. S. Post Office Department. The defendant argues that under the authority granted by 39 U.S.C. § 2002(a) (1970),[1] the Comptroller General approved the transfer to the Postal Service of the unexpended balances of the former Post Office Department for the fiscal year 1971, which began July 1, 1970, but not for prior years. Therefore, the defendant argues, liabilities attributable to the operations of the former Post Office Department, but which cover periods after June 30, 1970, are liabilities of the new Postal Service, not the United States. It contends that since 28 U.S.C. § 1491 (1970), under which the plaintiff claims this court has jurisdiction of his claim, limits this court's jurisdiction to claims "against the United States," this court has jurisdiction over only that portion of the plaintiff's claim which covers the period before July 1, 1970.

■■ Section 5 of the Postal Reorganization Act, Pub.L. 91–375, Aug. 12,

---

[1]. 39 U.S.C. § 2002(a) (1970) provides in pertinent part as follows:

"§ 2002. Capital of the Postal Service.

"(a) * * * The value of assets and the amount of liabilities transferred to the Postal Service upon the commencement of operations of the Postal Service shall be determined by the Postal Service subject to the approval of the Comptroller General, in accordance with the following guidelines:

   *      *      *      *      *

"(2) All liabilities attributable to operations of the former Post Office Department shall remain liabilities of the Government of the United States, except that upon commencement of operations of the Postal Service, the unexpended balances of appropriations made to, held or used by, or available to the former Post Office Department and all liabilities chargeable thereto shall become assets and liabilities, respectively, of the Postal Service."

1970, 84 Stat. 774, contains the saving provisions of the Act. Section 5(c) [2] contains the provisions applicable to the case at bar. We believe that Section 5(c) read as a whole indicates that Congress intended the Postal Reorganization Act to have no effect on administrative or judicial proceedings commenced prior to enactment of the Act, except that the Postal Service would assume those functions concerned with such proceedings which had been handled by the Post Office Department prior to the Act. The Act became law on August 12, 1970, and Section 2002(a) became effective on July 1, 1971,[3] after plaintiff's claim arose and after plaintiff had initiated proceedings before the CSC. The administrative proceedings before the CSC were part of the adjudicatory process which was provided by law to allow adjudication of claims of discharged employees. Therefore, we hold that the Postal Reorganization Act had no jurisdictional effect on the proceedings in this case involving the plaintiff's claim that he was improperly discharged. Since the plaintiff could maintain an action against the United States in this court prior to enactment of the Postal Reorganization Act, he may still maintain such an action under the facts of this case.

Plaintiff's argument in support of his motion for summary judgment is that his written statement to the Postal Inspector on March 17, 1969, was obtained in such a manner as to make it inadmissible against him; and that without the statement, the charge of misuse of official funds, and the adverse decision of the CSC, were not supported by substantial evidence. The plaintiff contends that the statement was inadmissible because the Inspector coerced it from him by forcing him through threats to choose between losing his job if he failed to answer the Inspector's questions and surrendering his fifth amendment privilege against self-incrimination if he did answer the questions. He cites the Supreme Court's decisions in Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968), and Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), and this court's decision in Kalkines v. United States, 473 F.2d 1391, 200 Ct.Cl. 570 (1973), as direct support for his position.

In *Kalkines,* we relied on *Uniform Sanitation Men,* and *Gardner* and *Garrity* to a lesser extent, in holding that an

---

**2.** Postal Reorganization Act, Pub.L. 91–375, § 5(c), Aug. 12, 1970, 84 Stat. 774 provides:

"(c)(1) Except as provided in paragraph (2) of this subsection—

"(A) the provisions of this Act shall not affect suits commenced prior to the date this section takes effect; and

"(B) in all such suits proceedings shall be had, appeals taken, and judgments rendered, in the same manner and effect as if this Act had not been enacted.

"No suit, action, or other proceeding commenced by or against any officer in his official capacity as an officer of any department or agency, functions of which are transferred by this Act, shall abate by reason of the enactment of this Act. No cause of action by or against any department or agency, functions of which are transferred by this Act, or by or against any officer thereof in his official capacity shall abate by reason of the enactment of this Act. Causes of actions, suits, actions, or other proceedings may be asserted by or against the Postal Service or such official of that Service as may be appropriate and, in any litigation pending when this section takes effect, the court may at any time, on its own motion or that of any party, enter an order which will give effect to the provisions of this subsection.

"(2) If before the date on which any provision of this Act takes effect any department or agency, or officer thereof in his official capacity, is a party to a suit, and under this Act—

"(A) such department or agency is transferred to the Postal Service; or

"(B) any function of such department, agency, or officer is transferred to the Postal Service;

such suit shall be continued by the Postal Service."

**3.** Postal Reorganization Act, Pub.L. 91–375, § 15(a), Aug. 12, 1970, 84 Stat. 787. See note following 39 U.S.C. § 2002 (1970).

employee may not be put to a choice between possibly going to jail for answering questions and losing his job for not answering, and then be fired for not answering. The plaintiff in that case had been under criminal investigation during the same time that he was being investigated by his employing agency, the Bureau of Customs of the Treasury Department. The Bureau of Customs' investigators never told the plaintiff that he had a constitutional privilege to remain silent. On the contrary, he was specifically told of agency regulations which required him to disclose any information requested by customs agents. Since the customs agents also failed to advise the plaintiff that if he did disclose requested information, such information or its fruits could not be used in a criminal prosecution, we held that discharging him for failing to disclose the requested information was improper.

Plaintiff in the case at bar argues that the Postal Inspector placed him in the same dilemma that the customs agents placed the plaintiff in *Kalkines*. Therefore, the argument continues, the written statement given to the Inspector was the product of coercion. Plaintiff states that several Postal Manual regulations [4] were in effect on March 17, 1969, which support his argument that his failure to answer questions would have resulted in his dismissal from the Post Office Department. He states that he either knew or should have known of the allegedly coercive regulations, and, therefore, he should have been warned that any information he disclosed or its fruits could not be used against him in a criminal prosecution. Since he was not so warned, he argues that his written statement was improperly considered by the CSC.

■ Because the Postal Inspector was investigating the possible commission of a criminal offense, and because Postal Inspectors were authorized by regulation [5] to make arrests, the investigation of plaintiff was a criminal investigation, as well as a postal investigation. Nevertheless, we conclude that the investigation of the plaintiff did not place him in a position where he should have reasonably believed that he would lose his job if he failed to disclose possibly incriminating information.

The BAR found that the plaintiff's written statement was not given under circumstances which would make it inadmissible in the adjudication of his case. While such a finding is not as specific

---

4. The Postal Manual regulations cited by plaintiff are §§ 717.311, 744.17, 833.1, 833.3. Section 717.311 provides in pertinent part:
"Removal is an action to effect the absolute separation of an employee other than temporary or probational for cause, involving misconduct, delinquency, or inefficiency or other cause not covered by one of the separation terms described in this part, for example:

&ast; &ast; &ast; &ast; &ast;

"b. Serious infractions of postal regulations."

&ast; &ast; &ast; &ast; &ast;

Section 744.17 provides:
"Employees shall cooperate in any postal investigation."
Section 833.1 provides in pertinent part:
"Investigations are made by postal inspectors to determine responsibility for * * * :"

&ast; &ast; &ast; &ast; &ast;

"e. Loss of Government funds, accountable paper or property through theft, embezzlement, or otherwise."

Section 833.3 provides:
"Postmasters and employees are often called on for information and assistance during investigations of the subjects mentioned in 833.1. Such co-operation must be extended. (See 744.17)."

5. 39 C.F.R. § 831.9 (1969). Section 831.9 provided in pertinent part:
"(a) *Authorization.* Postal Inspectors are authorized to perform the following functions in connection with any matter within their respective official duties as established by the Chief Postal Inspector.

&ast; &ast; &ast; &ast; &ast;

"(3) Make arrests without warrant for felonies cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such a felony."

&ast; &ast; &ast; &ast; &ast;

as it could have been, we think it encompasses a finding that the plaintiff was not told that he would lose his job if he remained silent. Before the BAR, one of the plaintiff's complaints was that he was unduly pressured into making his statement. Also, when the plaintiff filed a list of errors and corrections in the transcript of the agency hearing, one of his corrections was that the Postal Inspector had told him he would be fired if he remained silent. Therefore, we think the issue of whether or not the plaintiff was threatened with dismissal for remaining silent was clearly before the BAR, and that the issue was decided against the plaintiff.

This court has said on many occasions that we will not disturb a CSC decision in a dismissal case unless the decision was arbitrary, capricious, or not supported by substantial evidence. Grover v. United States, 200 Ct.Cl. 337 (1973); and cases cited therein. At the agency hearing, the Postal Inspector testified that he never told the plaintiff that he would be fired if he did not admit guilt. Additionally, at the CSC hearing, the Inspector and the South Houston, Texas Postmaster testified that plaintiff had willingly made his statement. Also, the Postmaster testified that nine days after the statement was made, he had a meeting with plaintiff to discuss possible actions that could be taken against plaintiff. According to the Postmaster, plaintiff never suggested that he had been subjected to any undue pressure prior to making his statement. The testimony of the Inspector and the Postmaster clearly constitutes substantial evidence in support of the BAR's finding that plaintiff was not threatened with losing his job if he remained silent.

■ Even though plaintiff was not specifically threatened with discharge for failing to speak, he claims that the *Kalkines* decision still made his statement inadmissible because the existing Post Office Department regulations at the time of his statement could reasonably have been interpreted so as to have required him to give incriminating information to investigators. However, the Postal Manual regulations on which the plaintiff relies cannot be so interpreted. Those regulations say essentially that postal employees must cooperate in any postal investigation or face the possibility of an involuntary separation. They do not state or suggest that the duty to cooperate is absolute and unqualified at all times and in all circumstances. Most importantly, they do not require employees to disclose all information in their possession which pertains to postal matters under investigation. The cited regulations only require postal employees to do what every citizen is required to do, *i. e.*, to come forward and speak where one has relevant knowledge of a matter under investigation by authorized officials. Such regulations do not purport to abrogate the constitutional privilege of each employee to refuse to give incriminating testimony against himself.

The fact that plaintiff received no specific threats of a job loss for failing to speak, and the fact that his employing agency operated under no regulations which could reasonably be interpreted to have required him to give incriminating information to investigators, sharply distinguish this case from the situation which was involved in *Kalkines*. In that case, investigators threatened the plaintiff with a discharge for remaining silent and the employing agency had regulations which required him to either give possibly incriminating information or face a possible discharge. The regulations and the threats left no doubt that the plaintiff in that case faced a job loss if he failed to give possibly incriminating answers. The coercion resulting from placing an employee in a vise formed on one side by threats and regulations that would result in a discharge for failing to speak, and formed on the other side by the fear of a jail term for incriminating himself, made the resulting statements inadmissible against *Kalkines*. However, in the case at bar, there was no such coercion. One element of pressure was missing here

because during the investigation the plaintiff was not threatened that his failure to speak would result in his discharge from the Post Office Department, and the regulations did not so provide. Therefore, we hold that plaintiff's written statement was not coerced from him by forcing him through threats or the regulations to choose between losing his job for remaining silent and surrendering his fifth amendment right against self-incrimination.

Defendant, in its second argument in support of its motion for summary judgment, contends that the CSC decision sustaining the plaintiff's dismissal was supported by substantial evidence in the record and was neither arbitrary nor capricious. Plaintiff opposes defendant's motion on several grounds, one of which centers around his allegation that the CSC hearing examiner refused his request to provide at his own expense a court reporter in order to get a complete record of the hearing. Plaintiff concedes that no statutes or administrative regulations required the keeping of a verbatim transcript of CSC hearings. However, he argues that in view of the sensitive constitutional areas of inquiry which were involved, the refusal to allow the keeping of an exact record constituted an arbitrary and capricious abuse of discretion.

For the purpose of disposing of the defendant's motion for summary judgment, we assume that plaintiff's allegations concerning his request for a court reporter are true. This court was faced with a very similar situation in Horn v. United States, 177 F.Supp. 438, 147 Ct.Cl. 234 (1959). In that case, we held that the CSC's denial of a verbatim transcript was neither arbitrary nor capricious where a comprehensive summary of the hearing was prepared, and where the plaintiff was allowed to request changes in the summary, all of which were made. We still adhere to that holding, and such adherence requires that we reject the plaintiff's argument in the instant case. A comprehensive summary of plaintiff's hearing

before the CSC was prepared and submitted to the CSC Regional Office and to the BAR. Plaintiff presented additions and corrections to the summary which were noted by the Regional Office and the BAR. This procedure allowed plaintiff to receive a full consideration of his objections to his discharge. Therefore, the CSC's denial of a verbatim transcript was neither arbitrary nor capricious.

Plaintiff also contends that summary judgment for the defendant is improper because the fifth amendment guarantee of procedural due process requires that a judicial tribunal, and not an administrative agency, determine the voluntariness and admissibility of his written statement. In support of this contention, he cites the reasoning of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

In *Jackson*, the Supreme Court dealt with New York's former procedure for determining the voluntariness and admissibility of a confession in a criminal case. The New York trial court had submitted the voluntariness issue to the jury along with the other issues in the case. The jury was instructed to disregard the confession if it was involuntary, and to determine guilt or innocence solely from the other evidence. Alternatively, if the confession was voluntary, the jury was to determine its truth or reliability and afford it weight accordingly. The Supreme Court held that this procedure did not satisfy the requirements of the Due Process Clause of the Fourteenth Amendment.

The issue raised by plaintiff's contention is to what extent the Constitution extends procedural due process protection to a terminated Federal employee in an administrative proceeding. The decision in *Jackson* did not speak to this issue since that case involved a criminal trial. However, the Supreme Court recently addressed this issue in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). In that case, a nonprobationary employee in the competitive civil service contended that his dis-

missal for cause without a prior hearing denied him procedural due process. The Court held that the Constitution did not require a hearing prior to dismissal. Mr. Justice Rehnquist, speaking for a plurality of the Court, said as follows:

> In sum, we hold that the Lloyd-La-Follette Act, in at once conferring upon nonprobationary federal employees the right not to be discharged except for "cause" and prescribing the procedural means by which that right was to be protected, did not create an expectancy of job retention in those employees requiring procedural protection under the Due Process Clause beyond that afforded here by the statute and related agency regulations. We also conclude that the post termination hearing procedures provided by the Civil Service Commission and OEO adequately protect those federal employees' liberty interest, recognized in *Roth, supra*, in not being wrongfully stigmatized by untrue and unsupported administrative charges. * * * [*Id*. at 163, 94 S.Ct. at 1649.]

By the use of this language, Justice Rehnquist seems to imply that a nonprobationary Federal employee has at least a liberty interest that is entitled to some procedural due process protection when the employee is terminated for cause.

The six Justices other than the plurality [6] seemed to agree that a Federal employee has a property interest that is entitled to procedural due process protection when the employee is discharged for cause.[7] We believe the opinions in *Arnett* clearly support the proposition that the fifth amendment guarantee of procedural due process extends some protection to a nonprobationary employee who is discharged for cause.

With these principles in mind, we examine the plaintiff's contention that the procedural due process protection which extends to government employees includes a requirement that a judicial tribunal, and not an administrative agency, determine the voluntariness and admissibility of the employees' statements. The Supreme Court's decision in Jackson v. Denno, *supra*, certainly does not support this argument.

The *Jackson* decision dealt only with the roles of the judge and the jury in a criminal trial. The Court was primarily interested in insuring that criminal procedures would be fully adequate to insure that defendants were afforded adequate protection under the Due Process Clause of the Fourteenth Amendment against the use of involuntary confessions. It struck down the practice of simultaneously giving the jury the evidence going to the voluntariness of a confession, as well as all of the corroborating evidence tending to show that the confession was true and that the defendant committed the crime. The Court reasoned that the jury might believe the confession and believe that the defend-

---

6. Justice Powell filed an opinion concurring in part and concurring in the result in part, in which Justice Blackmun joined. Justice White filed an opinion concurring in part and dissenting in part. Justice Douglas filed a dissenting opinion. Justice Marshall filed a dissenting opinion, in which Justice Douglas and Justice Brennan joined.

7. Justice White in his opinion stated:

"[W]here there is a legitimate entitlement to a job, as when a person is given employment subject to his meeting certain specific conditions, due process requires, in order to insure against arbitrariness by the State in the administration of its law, that a person be given notice and a hearing before he is finally discharged. * * *

* * * * *

"To be sure, to determine the existence of the property interest, as for example, whether a teacher is tenured or not, one looks to the controlling law, in this case federal statutory law, the Lloyd-LaFollette Act, which provides that a person can only be fired for cause. The fact that the origins of the property right are with the State makes no difference for the nature of the procedures required. While the State may define what is and what is not property, once having defined those rights the Constitution defines due process, and as I understand it six members of the Court are in agreement on this fundamental proposition." [Arnett v. Kennedy, *supra* at ——, 94 S.Ct. at 1661.]

ant had committed the very act with which he was charged, all being circumstances which might seriously distort evaluation of the accused's credibility and assessment of the testimony concerning the critical facts surrounding his confession. Therefore, the Court held that criminal defendants are entitled to a hearing on the voluntariness issue separate and apart from any consideration of the guilt or innocence issue; and that both issues may not be decided by the same jury.

The *Jackson* opinion included no discussion of the proper functions of an administrative agency and a judicial tribunal in a case involving administrative proceedings, so it is of no help to the plaintiff in the instant case. Additionally, we believe the several opinions in *Arnett* preclude a favorable decision for the plaintiff on the issue of whether or not an administrative agency may determine the voluntariness and admissibility of a confession.

If procedural due process required the voluntariness issue to be decided by a judicial tribunal, we see no reason why the entire hearing would not be required to be conducted by such a tribunal. Although the *Arnett* case dealt only with procedural due process requirements as to the time of a hearing, the Court strongly indicated that an administrative agency could conduct any required hearing. Certainly Justice Rehnquist's language which is quoted above indicates that the plurality believed that the applicable statutes and regulations afford discharged Federal employees all the procedural protection to which they are entitled. The remaining Justices, all of whom indicated that procedural due process guarantees extend to discharged employees, never questioned in the slightest the practice of allowing administrative agencies to conduct required hearings. Therefore, the Court strongly indicated that hearings before administrative officers are sufficient to provide discharged Federal employees any procedural protections to which they are entitled. We know of no reason why the

issue concerning the voluntariness of a confession should be treated any differently from the other issues which an administrative body, or a hearing officer, must decide during the course of a hearing. Therefore, we hold that the CSC acted properly in determining the voluntariness of the plaintiff's statement and in ruling on the statement's admissibility.

Plaintiff's final argument in support of his contention that summary judgment for the defendant should be denied is that there is a fact question as to the voluntariness of his confession which must be resolved by this court. He alleges that his written statement was coerced from him, and that he was warned of neither his right to remain silent nor his right to counsel prior to his making the statement.

As we noted above, the BAR found that plaintiff's written statement was not made under circumstances which would make it inadmissible in the adjudication of his case. We believe this finding was adverse to plaintiff's claims of coercion and lack of warnings. Therefore, the issue is whether or not the record contains substantial evidence in support of the BAR's finding.

█ The record of the agency hearing shows that the investigating Postal Inspector testified that prior to taking plaintiff's statement, he told plaintiff that he (the plaintiff) did not have to make a statement and that he had a right to have an attorney present. The record also indicates that the Inspector testified that he did not speak threateningly to plaintiff during the interrogation. The record of the hearing before the CSC Hearing Examiner shows that the Inspector again testified that he had given plaintiff complete warnings and had not threatened him. The same record also shows that the South Houston Texas Postmaster testified that he met with plaintiff on March 26, 1969, to discuss the plaintiff's situation, and that during the meeting, the plaintiff made no allegations of coercion. The first

paragraph of the written statement signed by the plaintiff stated as follows:

> I, C. C. Terry, having been duly sworn wish to make the following statement. This statement is made of my own free will. No threats or promises have been made to me. I have been advised that I do not have to make any statement and that any statement I make can be used against me. I have also been advised of my constitutional rights including my right to an attorney. I understand my rights and I do not desire an attorney at this time.

This statement may not prove a lack of coercion, but it is at least some evidence that the plaintiff received the proper warnings. The statement itself provides the warnings concerning the right to remain silent and the right to legal counsel. We believe that all of this evidence, which was before the BAR, constitutes more than substantial evidence in support of the finding that plaintiff's statement was not inadmissible. Therefore, we hold that the BAR properly found that plaintiff's statement was admissible.

Plaintiff's statement, and the testimony of the Postal Inspector and the Postmaster concerning the statement, certainly support the charge that plaintiff misused official funds. In addition, the BAR had other evidence before it which tended to show that plaintiff had misused official funds. The shortage in the plaintiff's fixed credit funds, plaintiff's attempt to place money in his cash drawer, and the money order receipts which corroborated plaintiff's written statement supported a finding of misuse of funds by plaintiff. The sum of this evidence, as the defendant contends, easily constitutes substantial evidence in support of the BAR's finding that plaintiff misused official funds as charged. Therefore, we hold that the BAR properly found that there was sufficient cause for plaintiff's discharge.

For the reasons stated above, we hold that the decision of the BAR was supported by substantial evidence and was neither arbitrary nor capricious. Accordingly, plaintiff's motion for summary judgment is denied, defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.