Mitchell VAN BOURG, Appellant,

v.

Paul H. NITZE, Secretary of the Navy,
Appellee.

No. 20584.

United States Court of Appeals
District of Columbia Circuit.

Argued April 10, 1967.

Decided Oct. 17, 1967.

Mr. Chester C. Shore, Washington, D. C., with whom Messrs. Jack Wasserman and David Carliner, Washington, D. C., were on the brief, for appellant.

Mr. George B. Searls, Attorney, Department of Justice, with whom Asst. Atty. Gen. J. Walter Yeagley, Mr. Kevin T. Maroney and Mrs. Lee B. Anderson, Attorneys, Department of Justice, were on the brief, for appellee.

Before BASTIAN, Senior Circuit Judge, and TAMM and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

■ This is an appeal from a grant of summary judgment in favor of appellee, defendant below in a declaratory judgment action instituted by appellant to compel the Secretary of the Navy to change the nature of his discharge from "under conditions other than honorable" to "honorable".[1]

---

1. Naval Regulations, published in Bureau of Naval Personnel Manual, Part C–10311, prescribe five types of discharges: (1) honorable, (2) general (under honorable conditions), (3) undesirable (the equivalent for officers is a discharge "under other than honorable conditions"), (4) bad conduct (never issued to officers), and (5) dishonorable (a "dismissal" for officers). Since the vast majority of discharges from the armed forces are honorable, anything less than an honorable discharge stigmatizes the recipient and is punitive in nature. Bland v. Connally, 110 U.S.App. D.C. 375, 376 n. 1, 293 F.2d 852, 853

In 1944 appellant received a commission as an officer in the United States Naval Reserve and was called to active duty. Upon termination of his active service in 1946, he was separated from active Navy duty "under honorable conditions" and transferred to inactive duty in the United States Naval Reserve. During the next five years appellant's contact with the Navy appears to have been negligible. He attended Harvard as a graduate student under the GI Bill of Rights and subsequently became a member of an architectural firm in California.

On August 10, 1951, the Chief of Naval Personnel, acting through the Commandant of the Twelfth Naval District, sent appellant a memorandum advising him that information concerning his conduct or associations had cast doubt upon his loyalty. The memorandum referred to the Navy regulations setting forth the procedure to be followed in determining whether appellant should be discharged from the service.[2] Accompanying the memorandum was a set of interrogatories for appellant to answer if he be so advised, and a "Narrative Statement of Facts Disclosed By Investigation" prepared by the Office of Naval Intelligence. The "Narrative Statement" contained the following charges: (1) that appellant was known to have been a member of the Communist Party, USA, since 1946 and to have held an office in that organization in 1947; (2) that appellant was known to have subscribed in 1949 to the "Daily People's World," the official West Coast organ of the Communist Party, USA; (3) that appellant attended an American Student Union Camp, cited in 1939 by the Special House of Representatives Committee on Un-American Activities as a Communist Front, from August 18th to August 25, 1940; and (4) that appellant, in 1948, circulated petitions to qualify the Independent Progressive Party on the California ballot.

Appellant retained counsel and was informed that although he could request a hearing before a board of three officers, under then existing Navy regulations the board could rely upon undisclosed confidential information and sources, as well as reports of *ex parte* investigations. Alternatively, appellant was informed that he could submit his resignation "for the good of the service" and receive a discharge under conditions other than honorable.[3] Appellant took the latter course and tendered his resignation.[4] It

---

(1961). *See* Everett, *Military Administrative Discharges—The Pendulum Swings*, 1966, DUKE L.J. 41, 43–44.

2. SECNAV Letter P1-6, January 10, 1949, Navy Department Bulletin 49–15. This directive, issued in implementation of Executive Order No. 1835 of March 21, 1947, called for the separation from the Naval Service of members whose conduct and associations cast doubt upon their loyalty.

3. The statute then in force provided, in pertinent part:
"In time of peace no officer or man of the Naval Reserve shall be discharged except at the expiration of his term of service or upon his own request or for full and sufficient cause, in the discretion of such administrative authority as the Secretary of the Navy may designate."
The Naval Reserve Act of 1938, 52 Stat. 1175, 34 U.S.C. § 853d (1946). This section was repealed by the Armed Ser-

vices Reserve Act of 1952, 10 U.S.C. § 1163 (1964).

4. Appellant's letter of resignation read as follows:
"I hereby submit my resignation from the naval service of the United States for the good of the service, and I request that the same be so accepted. I have been informed and understand that if my resignation for the good of the service which is herein submitted be accepted, I shall subsequently receive a certificate of discharge from the naval service which will state upon its face that it is under conditions other than honorable; that I may be deprived of substantial rights, benefits, and bounties which Federal or State legislation confers or may hereafter confer upon persons with honorable service in, or separation from, the armed forces of the United States; and that I may expect to encounter substantial prejudice in civil life in sit-

was accepted and he was given a discharge "under conditions other than honorable."

On April 8, 1963, appellant filed an application for review of the nature of his discharge with the Navy Discharge Review Board (hereinafter Review Board). The statute authorizing the creation of the Navy Discharge Review Board,[5] now 10 U.S.C. § 1553 (1964), provides in pertinent part:

> "(a) The Secretary concerned shall, * * * establish a board of review, consisting of five members, to review the discharge or dismissal (other than a discharge or dismissal by sentence of a general court-martial) of *any* former member of an armed force under the jurisdiction of his department upon its own motion or upon the request of the former member * * *. A motion or request for review must be made *within 15 years* after the date of the discharge or dismissal." [Emphasis added.]

Subject to review by the Secretary of the Navy, the Review Board may "change a discharge or dismissal, or issue a new discharge, to reflect its findings." 10 U.S.C. § 1553(b) (1964). It is further provided by regulation that the jurisdiction of the Review Board includes "*every* separation from the naval service, *irrespective of the manner evidenced or brought about,* except separations by reason of the sentence of a general court-martial." [Emphasis added]. 32 C.F.R. § 724.2(a) (1967).[6]

Appellant's application for review of the nature of his discharge was made within the 15 year statutory period. Accordingly the Review Board set the matter for hearing. In order to warrant the relief sought, appellant was required to show to the satisfaction of the Review Board that the nature of his discharge "was improperly or inequitably issued under standards of naval law and discipline existing at the time" or since made retroactively applicable. 32 C.F.R. § 724.15(e) (4) (1967).

Appellant appeared at the hearing and was represented by counsel. In his opening statement, counsel requested an opportunity to confront appellant's accusers and explained that had appellant's right to confront his accusers at a hearing been recognized in 1951, appellant would not have submitted his resignation "for the good of the service."[7] Appellant then testified concerning the charges and the reasons for the course of action he had taken. He denied that he was ever an officer or member of the Communist Party, USA. Although he admitted that he had subscribed to the Daily People's World from 1946 to 1948, he stated that this was prompted by an intellectual and not a political interest and that since then he has not read that newspaper. At age 19 he did attend the American Union Camp for one week, but only because his future wife was going to be there.[8] And, finally, appellant testified that while he was not a member of the Independent Progressive Party he started a petition to qualify that Party on the California

---

uations wherein the nature of service rendered in, or the character of separation from, the armed forces may have a bearing."

5. Servicemen's Readjustment Act of 1944, § 301, 58 Stat. 286, 38 U.S.C. § 693h (1964).

6. All regulations hereinafter referred to which are contained in Title 32, Code of Federal Regulations, Part 724, were in force at the time of appellant's 1963 hearing.

7. In this regard, counsel was referring to our decision in Bland v. Connally, 110 U.S.App.D.C. 375, 293 F.2d 852 (1961),

wherein it was held that the Secretary of the Navy was without authority to issue a punitive discharge such as one under conditions other than honorable on the basis of *ex parte* information.

8. The Review Board appeared to be overly concerned with this incident. However, in Harmon v. Brucker, 355 U.S. 579, 583, 78 S.Ct. 433, 435, 2 L.Ed.2d 503 (1958), the Court stated that the "type of discharge to be issued is to be determined solely by the soldier's military record in the Army." It is therefore apparent that the weight placed on this incident by the Review Board, if any, was misplaced.

ballot in order "to have a third voice on the political scene" and because of his admiration for its presidential candidate, former Vice-President Henry Wallace.

In connection with the circumstances at the time he tendered his resignation, Appellant testified that in light of then existing Navy regulations [9] and the political climate existing in 1951, he was afraid to make an issue of the charges even though he felt he was innocent. This was in part due to his desire not to hurt people associated with him, including his partners in his architectural firm. With the change in the climate of the times, an established architectural practice with new partners willing to accept the possible risk attendant upon making the nature of appellant's discharge public knowledge, and a change in the governing law, appellant testified that he felt able to answer the charges against him and seek a change in the nature of his discharge.

On September 25, 1963, the Review Board concluded that the nature of appellant's discharge was proper and that no change was warranted. On the Review of Discharge Form [NAVEXOS-2409 (REV.: 6-61)] used in appellant's case, under the heading "Conclusion" the Review Board remarked:

"After careful consideration of the testimony given, the facts presented in all available records of the Department of the Navy and of the claims and evidence submitted, the Board finds that the discharge was proper and equitable under standards of law and discipline applicable at the time, or since made applicable, and that the discharge accurately reflects petitioner's conduct and character during the period of service which was terminated by the discharge. Not finding sufficient evidence to support a contrary conclusion, the Board concludes that no change, correction or modification should be made in the type or character of the discharge."

That the Review Board failed to make the findings of fact required of it by its own regulations is readily apparent.[10]

Less than a month after the above decision, appellant wrote a letter to the Secretary of the Review Board inquiring *inter alia,* whether the Review Board considered *ex parte* reports of the Office of Naval Intelligence in reaching its decision. An answer to this letter was not forthcoming until six months later, and at this time appellant was officially advised that *ex parte* reports of the Office of Naval Intelligence were considered by the Review Board. The Review Board was of the view that appellant's failure, prior to tendering his resignation, to "appear for or request a hearing" or "ask that he be confronted with wit-

9. An affidavit dated 1963, submitted by counsel for appellant at the time of his discharge, was part of the record before the Review Board. It stated that appellant indicated in 1951 that he would not have submitted his resignation "if the procedure had granted him the right to face his accusers, to see and rebut confidential information and sources and if his associations with suspect groups could not be made a basis for dismissal."

10. The applicable regulation, 32 C.F.R. § 724.16 provides:
The Board shall make findings of facts in each case which shall include the following:
(a) Type and nature of discharge or dismissal certificate or other documentary evidence of discharge or dismissal which was issued to the person concerned upon separation from the naval service.

(b) Authority under which discharge or dismissal was issued.
(c) Circumstances surrounding the discharge or dismissal as found by the Board to be established from all the evidence considered. This includes material and relevant facts showing in what specific particulars the original discharge or dismissal certificate was or was not proper or equitable under standards of naval law and discipline applicable to the case as defined in § 724.15(e) (4).
(d) Conduct and character of petitioner during the entire period of his naval service in the enlistment or other service period which was terminated by the discharge or dismissal under consideration.
(e) Such other facts as may be disclosed that are necessary and pertinent to the issue in any particular case.

nesses against him \* \* \* distinguishes his case from that of Bland"—referring to this court's opinion in Bland v. Connally, 110 U.S.App.D.C. 375, 293 F.2d 825 (1961). The letter went on to say that "by tendering his resignation upon receiving the narrative statement and interrogatories, it was felt that he tacitly admitted the substantial validity of the matter alleged against him and waived all procedural rights."

After being thus advised that *ex parte* reports were considered by the Review Board, and the Secretary of the Review Board having noted that further review could be sought before the Board for Correction of Naval Records [11] (hereinafter Correction Board), appellant promptly filed an application for review with that Board. The record of proceedings before the Review Board was made a part of that proceeding and no further hearing was held. On September 29, 1965, the Correction Board held that insufficient evidence had been presented to indicate probable material error or injustice and denied the application.

Having exhausted his administrative remedies, appellant filed this action for declaratory judgment in the District Court on November 23, 1965. Cross-motions for summary judgment were filed on the basis of the administrative record of the Review Board and the Correction Board. Appellee also submitted an affidavit of the Chief of Naval Personnel that "reliable information as to membership and office-holding in the Communist Party, USA, by Mr. VanBourg was furnished by one William Austin Bartlett, of San Francisco, California, who died of natural causes at the age of 76 on 14 June 1953."

The District Judge found that appellant's counsel before the Review Board had requested an opportunity to see the *ex parte* reports which formed a part of the basis for the charges against appellant and that this request had been denied. However, he concluded that appellant, by tendering his resignation "for the good of the service" in 1951, had waived any rights he now claimed to have concerning confrontation and cross-examination of witnesses. Accordingly, appellant's motion for summary judgment was denied and appellee's motion for summary judgment was granted.[12]

For reasons now to be developed, we reverse and remand this case to the District Court for the framing of an appropriate order retaining jurisdiction pending further consideration by the Review Board.

■ The function of the Review Board and the Correction Board is to review the type and nature of discharges in order to correct errors or remove injustices. And it is the duty of the judiciary to inquire into an allegedly wrongful and detrimental refusal to grant deserved relief.[13] Ashe v. McNamara, 355 F.2d 277, 282 (1st Cir. 1965). With this in mind, we turn to an examination of the statutes and regulations governing the administrative proceedings we are called upon to review to determine if the Navy departed from the prescribed man-

11. The Correction Board was created pursuant to the authorization contained in the *Legislative Reorganization Act of 1946*, § 207, 60 Stat. 837. As amended and recodified, this is now 10 U.S.C. § 1552 (1964), and provides in part:
   "The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice."

12. The opinion of the District Court is reported at 259 F.Supp. 774 (1966).

13. It is well established that military decisions and actions are reviewable by the judiciary to determine whether or not the Secretary has acted within the sphere of his statutory and constitutional authority. Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); Bland v. Connally, 110 U.S.App. D.C. 375, 293 F.2d 852 (1961).

ner in which a review of the nature of a discharge could be had.[14]

██ We note that appellant had 16 years from the date of his discharge to seek a change in the nature thereof by petitioning the Review Board. 10 U.S.C. § 1553 (1964). The statute speaks in terms of review of the discharge of *any* former member of a branch of the Armed Forces. By Naval regulation it has been provided that this encompasses *"every separation from the naval service, irrespective of the manner evidenced or brought about."* [15] [Emphasis added.] Consequently, it is apparent that although appellant waived his right to a hearing in 1951 when he tendered his resignation "for the good of the service" he was still entitled in 1963 to apply to the Review Board for a change in the nature of his discharge. Indeed, the record before us shows that in 1958, after the Supreme Court's decision in Harmon v. Brucker, *supra*, the Review Board, on its own motion, reviewed the circumstances of appellant's discharge and noted that he was entitled to apply to the Review Board concerning the nature of his discharge.

We must decide whether the hearing afforded appellant in 1963 was consonant with the kind of hearing to which he was entitled. The applicable regulations provide, *inter alia*, that appellant was entitled to appear in person and with counsel, 32 C.F.R. § 724.5(b) (1967); all witnesses called were to be subject to cross-examination, 32 C.F.R. § 724.12 (1967); and, upon request the Review Board could furnish "such information from the official records pertaining to a discharge or dismissal as may be necessary in order to permit of a fair and

impartial review," 32 C.F.R. § 724.13(b) (1967). This last regulation further provides that "classified matter" will not be disclosed or made available. In such instances, however, "when it is necessary in the interests of justice to acquaint the applicant with the substance of such matter, the Board will obtain and make available * * * such summary of the classified matter as may be in the judgment of the Board relevant to the case and as will not be incompatible with the public interest." Id.

██ The only evidence against appellant was contained in the Office of Naval Intelligence reports. The materiality of the information contained in these reports, apparently supplied by one William Bartlett, is undisputed. These reports were not made available to appellant, and he was not given a summary of their contents. Whether there was any reason for these reports to have remained classified in 1963 or whether they still need be considered classified today we do not know. But, unless there is some overriding public interest, these reports should have been declassified and made available, or at least a summary of their contents given to appellant. This is not to say that such classified information must always be made available by the Review Board, for we recognize that such proceedings, being a matter of legislative grace, do not have to provide the same standards of "fairness" required at the time the discharge occurs. Bland v. Connally, *supra;* Clackum v. United States, 148 Ct.Cl. 404, 296 F.2d 226 (1960); *cf.* Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). However, having adopted regulations in

---

14. Congress, in amending 10 U.S.C. § 1553 (1964) into its present form, Act of September 7, 1962, 76 Stat. 509, did not intend any substantive change in this provision. Thus the elimination of the provision that Review Board "findings * * * shall be subject to review only by the Secretary concerned" makes clear that judicial review is not precluded and casts strong doubt upon our earlier holding in Gentila v. Pace, 90 U.S.App.D.C. 75, 193 F.2d 924 (1951), cert. denied, 342 U.S. 943, 72 S.Ct. 556, 96 L.Ed. 702

(1952). *See* Jones, *Jurisdiction of the Federal Courts to Review the Character of Military Administrative Discharges,* 57 COLUM.L.REV. 917, 966 (1957). That Congress did not intend to preclude judicial review of the action of the Correction Board is also apparent. Ashe v. McNamara, 355 F.2d 277, 280–281 (1st Cir. 1965); *see* Hertzog v. United States, 167 Ct.Cl. 377, 384 (1964).

15. 32 C.F.R. 724.2(a) (1967).

this area, the Navy had to follow them. Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L. Ed.2d 1403 (1957).

■ In the same regard, the failure of the Review Board to make findings of fact, as required by regulation,[16] leaves us in the dark as to the basis for its conclusion. Under similar circumstances, such a defect in the administrative proceedings has precluded affirmance of a grant of summary judgment by the District Court and necessitated a remand. Olenick v. Brucker, 107 U.S.App.D.C. 5, 273 F.2d 819 (1959); Davis v. Brucker, 107 U.S.App.D.C. 152, 275 F.2d 181 (1960). While counsel for appellee has attempted to explain what findings the Review Board and the Correction Board must have made, and what factors it probably did not rely on, such *post hoc* rationalizations cannot suffice. *Cf.* NLRB v. Metropolitan Life Insurance Co., 380 U.S. 438, 443–444, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965); Braniff Airways, Inc. v. CAB, 126 U.S.App.D.C. 399, 379 F.2d 453 (1967).

■ In light of the above we find ourselves unable to accept the position taken by the District Judge that appellant's tendering of his resignation in 1951 constituted a waiver of "any right[s] that he now claims to have and, therefore [he] may not maintain this action."[17] 259 F.Supp. at 776. "A waiver in any kind of a case, is an intentional relinquishment of an existing right." Williams v. Alabama, 341 F.2d 777, 779 (5th Cir. 1965) [Emphasis omitted.]; *cf.* Helvering v. Ethel D. Co., 63 U.S.App.D.C. 157, 70 F.2d 761 (1934). Whatever procedural rights appellant might have waived in 1951 could not afford a basis for depriving him of the procedural rights he was entitled to before the Re-

view Board in 1963. In light of the request he made before the Review Board for an opportunity to examine any confidential reports which might be relied upon, we cannot say that appellant waived the rights afforded him by Naval regulation. *Cf.* Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955).

■ This leads us to consideration of one other ground for affirmance urged by appellee. It is contended that appellant's failure to bring this action until 1965 amounted to laches and bars his suit. To establish the defense of laches, "the evidence must show both that the delay was unreasonable and that it prejudiced the defendant." Powell v. Zuckert, 125 U.S.App.D.C. 55, 366 F.2d 634, 636 (1966). We think neither element of the defense is presented here.

■ In establishing a 15 year period in which to seek reconsideration of the nature of a discharge before the Review Board, and a period of 3 years thereafter to seek review before the Corrections Board when that avenue of review is also available, Congress has necessarily determined that all such applications, when timely filed, shall be considered on the merits. *See* Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 90 L. Ed. 743 (1946). In Ogden v. Zuckert, 111 U.S.App.D.C. 398, 298 F.2d 312 (1961) we held that the District Court had jurisdiction from the date of the issuance of the discharge, and that it was not mandatory under the statutes for an appellant to resort to his administrative remedies before seeking judicial review. However, it was noted that if such a course were followed, the District Court could, in the exercise of its discretion and while retaining jurisdiction, refrain from exercising jurisdiction to decide the case pending the pursuit of administra-

---

16. *See* note 9, *supra.* The Corrections Board also failed to make the findings of fact required by 32 C.F.R. 723.6(a) (3) (1967) (effective since Nov. 11, 1952).

17. The language of appellant's resignation was taken from the regulations furnished appellant in 1951, said regulations also

informing appellant that *ex parte* reports could be relied on if he did not resign. Since appellant had no possible awareness as of 1951 that he had a right to a hearing, under regulations and procedures then prevailing, his 1951 actions cannot fairly be construed as an intentional waiver of a hearing.

tive relief. Since appellant promptly sought review in the District Court after exhausting his administrative remedies and now challenges the adequacy of the review proceedings we cannot say that he was guilty of unreasonable delay.

Likewise, we disagree with appellee that he has been prejudiced by the delay encountered herein. The prejudice claimed is that Mr. Bartlett, who supplied the information as to appellant's membership and office holding in the Communist Party, died in 1953. Because of this, and the fact that the Office of Naval Intelligence investigation ceased when appellant submitted his resignation, any leads to other witnesses and sources of information have disappeared or become so stale as to be of little help at this late date.

■■■■■ However, it is our understanding that proceedings before the Review Board and the Correction Board are not *de novo* determinations of the type of discharge to be given. Rather they are a review of prior action with a view towards correcting past errors or injustices. In fulfilling this function, the respective Boards need not offer current testimony in support of the charges. Appellant's failure to answer interrogatories and his tendering of his resignation, while not rising to the level of a confession under these circumstances, are still material items of evidence which may be taken into account.[18] The contemporaneous statement of Mr. Bartlett, if specific and forthright, is entitled to be given weight by the Review Board even when contradicted by a current explanation by appellant. These considerations militate against appellee's contention that appellee would be prejudiced by making the *ex parte* Office of Naval Intelligence reports available to appellant, if these reports can now be declassified. We of course do not purport to say or even intimate that these reports should be declassified, but only that appellant would seem entitled to have an inquiry made as to whether they are now proper subjects for declassification. If he is apprised of the specifics of their content he may be able to provide explanations convincing to the Review Board for items that are incriminating in the absence of explanation. In any event appellant is entitled to be furnished a summary of those reports as required by the Review Board regulation.

■■■■■ In this proceeding, appellant urges us to order the Review Board to change the discharge from less than honorable to honorable. To do so would require that we determine and apply the standards of naval law and discipline extant in 1951. We not only decline this invitation but express no opinion about what those standards were. This is a matter for the Review Board—but in a proceeding conducted in accordance with its regulations.[19]

Upon being afforded an opportunity to rebut the specific bases for the charges, appellant may perhaps provide sufficient explanations to convince the Board that the charges were unfounded and that the nature of his discharge should indeed be changed. This is a decision for appellee to make after further proceedings are had before the Review Board. The case must be remanded with instructions that

18. The lack of findings of fact leave us in the dark as to the views of the Review Board and the Correction Board in this regard.

19. The Review Board, like the parties before us, correctly treated the instant discharge as one for cause in the sense that the controlling question is whether appellant's conduct during his term of service warranted severance under conditions other than honorable. The Board for Correction of Naval Records likewise addressed itself to the merits of the accusations involved. The Navy's acceptance of the 1951 resignation reflects a determination that there was cause to release appellant. However, as noted above, there was a fatal deviation from the procedural path charted by Congress before the Review Board found "that the discharge accurately reflects petitioner's conduct and character during the period of service which was terminated by the discharge."

the District Court frame an order retaining jurisdiction pending further consideration by the Review Board.

So ordered.