Joseph P. ROLLES, Appellant,

v.

CIVIL SERVICE COMMISSION et al.

No. 73–2054.

United States Court of Appeals,
District of Columbia Circuit.

Argued 5 Nov. 1974.

Decided 13 May 1975.

Rehearing _and Rehearing En Banc
Denied Aug. 11, 1975.

**1320**

Bardyl Rifat Tirana, Washington, D. C., for appellant.

Albert H. Turkus, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Ellen Lee Park, Asst. U. S. Attys., were on the brief, for appellees.

Before ROBINSON, ROBB and WILKEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILKEY.

Dissenting Opinion filed by Circuit Judge Robb.

WILKEY, Circuit Judge:

With whirlwind speed, appellant Rolles was subjected to accusations relating to his personal integrity and honesty, denied the right to respond to the accusations, transferred out of active military reserve status, and as a result removed from the Civil Service. Because the Constitution and the Air Force's own regulations forbid such procedures, we reverse the District Court's dismissal of appellant's complaint and remand with instructions that it order the full hearing which appellant has so far been denied.

### I. *Factual Background*

Appellant was employed by the Department of the Air Force in its Air Reserve Technician (ART) Program. The purpose of this program is to provide active reserve units with a core of reservists who can provide support services on a full-time basis to their units. Applicable Air Force regulations provide that an ART employee must maintain his active reserve membership as a condition of employment.

The chronology of events, uncontested by the parties, is central to an understanding of this case. Prior to 6 January 1971 Mr. Rolles held the position of Air Commander in the ART Program at Grissom Air Force Base (AFB), Indiana. He simultaneously held the rank of Colonel in the United States Air Force Reserve and a GS–13 (Step 7) rating in the Civil Service. Crucial to this case is the fact that prior to that date Rolles had been on *active* reserve status with the Air Force.

6 January 1971

Rolles received an administrative reprimand from Brigadier General John W. Hoff, United States Air Force Reserve. The reprimand alleged that a voucher prepared by Rolles was incorrect or false and that he diverted an Air Force aircraft to Andrews Air Force Base for his personal benefit.

7 January 1971

Before any response to the reprimand could be received, the Deputy Director for the Air Force Reserve Personnel ordered "immediate action" to reassign Rolles to nonactive military reserve status. These orders were actually issued on 11 January.

12 January 1971

Air Force Headquarters Before Rolles, even received his military transfer and without waiting for any

response to the reprimand, the Air Force sent Rolles a notice of his proposed removal *from the Civil Service ART position.*

**12 January 1971**

Grissom AFB, Indiana Rolles responded to the administrative reprimand sent him by General Hoff, specifically asking whether the reprimand was rendered "in Civil Service (ART) status, or . . . Military Status as a Colonel, USAFR." He also asked whether "[r]eclama or rebuttal channels [were] open to [him] . . .."

**15 January 1971**

General Hoff notified Rolles that the reprimand "was addressed to you as a military officer of the United States Air Force Reserve." It went on to state that "an administrative reprimand is not punitive, and therefore there are no grounds for reclama."

**15 January 1971**

In order to cover an obvious omission of a rather fundamental ingredient, the Air Force amended its notice of proposed removal of 12 January, by adding "for unsatisfactory Military performance and conduct under Rule 8, Table 12–1, AFM 35–3."

**22 January 1971**

Rolles sent a response to the notice of proposed removal from his Civil Service position.

**28 January 1971**

The Air Force amended its order of 11 January, adding the words "Unsatisfactory military performance and conduct" to the authority for reassignment.

**2 February 1971**

The Air Force sent Rolles a notice of its decision that he would be removed from Civil Service employment, which was followed on 11 February by the issuance of the formal notification of personnel action, removing Mr. Rolles from his Civil Service position, effective 19 February. The *sole reason* given for the removal action was: "Loss of active reserve membership."

We think the above makes clear the sequence of the distinct events relating to Rolles as an officer in the Air Force and as a civilian employee. Our dissenting colleague may find confusion in our recital of them, but we think the distinctions are clear. The linkage is that the civilian discharge was built solely upon the Air Force proceedings. The abominable feature of each proceeding, which we find totally repugnant to due process, is that nowhere in the military or civilian proceeding was Rolles afforded the chance to refute the charges set forth in reputation—damaging detail in our dissenting colleague's opinion.[1] To give Rolles the opportunity to do just that is the purpose of our remand action herein.

A post-termination Civil Service hearing was subsequently requested before an Air Force Examiner.[2] Even though

1. The dissent on page 1328 quotes an extract from General Hoff's 6 January reprimand. The only place that reprimand appears in the record (if it is properly in the record at all) is *as an addendum to the agency hearing. Rolles* sought to admit that reprimand into evidence along with four other documents. Management immediately objected to its admission and also objected to any witness "testifying as to the contents or genesis" of any of the five documents. App. 117–18. The Examiner again reaffirmed his position that he was not going to permit Rolles to inquire in any way into the circumstances surrounding his transfer to non-active reserve status. As a result of this, counsel for Rolles was forced at that point to rest his case.

2. Appellant noted the following grounds of appeal in his timely request for a hearing:

(a) the action was an adverse removal action without cause in violation of Chapter 75 of Title 5, United States Code; (b) the action was contrary to the Regulations of the Civil Service Commission; (c) the action was contrary to the regulations of the Air Force and Department of Defense; (d) the action was based upon a military action, taken without cause, to terminate Mr. Rolles' active reserve membership, and the military action

Rolles had now been removed from his Civil Service position, he had had no opportunity to answer the charges against him. It soon became evident that the Air Force had no intention of allowing him to answer these charges. When the Air Force Examiner discovered that Rolles wanted to utilize his post-termination Civil Service hearing to answer the charges made by General Hoff, he wrote that "[n]o evidence or argument concerning . . . ['the withdrawal of such reserve status from you because of alleged unsatisfactory military performance and conduct . . . '] will be permitted by either side . . . .." Although Rolles again at his hearing wished to contest the charges made in the reprimand, the Examiner strictly limited evidence to the simple question whether he had been transferred to non-active reserve status, an issue which was never in dispute.

What was in issue, as discussed later, was whether "the cause of the [Air Force] action did relate to circumstances within appellant's control."[3] On this appellant was forbidden to offer any evidence. At his hearing before the Air Force Examiner he was not permitted to go behind the Air Force's order transferring him to nonactive reserve status. Thus the gravamen of appellant's position is that at no point in this chronology of events has he ever been given an opportunity to refute the underlying charges made against him, as proved by the lengthy extracts from the various levels of proceedings quoted by our dissenting colleague.

Appellant filed an appropriate action in the District Court seeking review of the Civil Service Commission's decision affirming his dismissal. As a part of the relief sought, he requested a determination that he was denied a fair and adequate hearing as to the reasons for his dismissal. We emphasize that the only issue before us is the legality of a dismissal from a civilian Civil Service position and we do not decide any question relating to the legality or appropriateness of appellant's military transfer.[4] In considering this appeal we will examine first whether appellant's rights under the Civil Service law and its attendant regulations were violated, and will then examine whether appellant's constitutional rights to due process of law were infringed.

## II. Appellant's Rights Under the Lloyd-La Follette Act and Attendant Regulations

The Lloyd-La Follette Act, 5 U.S.C. § 7501, although enacted in 1912, is still the basic statutory protection for the job

was taken contrary to the regulations of the Air Force and Department of Defense; (e) the adverse removal action was designed to deny Mr. Rolles a right to a fair hearing on the essence of the charges against him, and to deny Mr. Rolles the protection of Chapter 77 of Title 5, United States Code; (f) the adverse removal action was the result of collaboration to remove Mr. Rolles from his position upon groundless charges without an opportunity for a fair hearing and without due process; and (g) the underlying charges which supported the military action, and which in turn supported the adverse removal action, were not true, and were not of such a nature even if true as would justify the adverse removal action taken herein.
Appendix, Volume II (hereinafter App.) 140, 141.

**3.** Decision of Regional Director of the Civil Service Commission, p. 4 (13 December 1971);

App. 45, 47. This decision was affirmed by the Commission's Board of Appeals and Review on 5 June 1972.

**4.** A challenge to the legality or appropriateness of appellant's transfer from active to nonactive reserve status will probably have to be made, in the first instance, to the Air Force Board for Correction of Military Records. We note that 10 U.S.C. § 1552(b) provides for a three-year statute of limitation on requests for correction. However, the Board is empowered to excuse a failure to file within three years "if it finds it to be in the interest of justice." On the facts of this case, we believe that it would be in the interest of justice to consider appellant's request for correction of any military records relating to the events of this case provided that such a request is made to the Board within a reasonable time after final action is taken on appellant's Civil Service status.

tenure of Civil Service employees.[5] The statute provides:

(a) An individual in the competitive service may be removed or suspended without pay only for such cause as will promote the efficiency of the service.

(b) An individual in the competitive service whose removal or suspension without pay is sought is entitled to reasons in writing and to—

(1) notice of the action sought and of any charges preferred against him;

(2) a copy of the charges;

(3) a reasonable time for filing a written answer to the charges, with affidavits; and

(4) a written decision on the answer at the earliest practicable date.

Examination of witnesses, trial, or hearing is not required but may be provided in the discretion of the individual directing the removal or suspension without pay. Copies of the charges, the notice of hearing, the answer, the reasons for and the order of removal or suspension without pay, and also the reasons for reduction in grade or pay, shall be made a part of the records of the employing agency, and, on request, shall be furnished to the individual affected and to the Civil Service Commission.

Both the Civil Service Commission and the Department of the Air Force have enlarged upon the procedural protections accorded by the Lloyd-La Follette Act. Specifically, the Commission has provided by regulation that an employee may appeal from an adverse decision. Such an appeal may be either to a hearing examiner within the employing agency, or directly to the Civil Service Commission.[6] Appellant was provided with a trial-type hearing by the Department of the Air Force. The procedural requirements for such hearings are set out in the Civil Service Commission's regulations.[7] Those regulations provide that

---

**5.** 5 U.S.C. § 7501 is a codification of the Lloyd-La Follette Act. It does not differ in substance from the original statute, Act of 24 August 1912, c. 389, § 6, 37 Stat. 555. The original text and a recounting of the events leading up to its passage appear in Justice Rehnquist's plurality opinion in Arnett v. Kennedy, 416 U.S. 134, 148–150, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

**6.** 5 CFR § 752.203 provides:

An employee is entitled to appeal to the Commission from an adverse action covered by this subpart. The appeal shall be in writing and shall set forth the employee's reasons for contesting the adverse action, with such offer of proof and pertinent documents as he is able to submit.

5 CFR § 771.205 provides:

An employee is entitled to appeal under the agency appeals system from the original decision. The agency shall accept and process a properly filed appeal in accordance with its appeals system.

5 CFR § 771.208 provides:

(a) *Entitlement.* Except as provided in paragraph (b) of this section, an employee is entitled to a hearing on his appeal before an examiner. The employee is entitled to appear at the hearing personally or through or accompanied by his representative. The hearing may precede either the original decision or the appellate decision, at the agen-

cy's option. Only one hearing shall be held unless the agency determines that unusual circumstances require a second hearing.

(b) *Denial of hearing.* The agency may deny an employee a hearing on his appeal only (1) when a hearing is impracticable by reason of unusual location or other extraordinary circumstance, or (2) when the employee failed to request a hearing offered before the original decision.

(c) *Notice.* The agency shall notify an employee in writing before the original decision or before the appellate decision of (1) his right to a hearing, or (2) the reasons for the denial of a hearing.

**7.** The pertinent regulations provide:

§ 771.209 *Examiner.*

(a) An examiner who meets the standards of experience and training prescribed by the Commission shall hold the hearing.

(b) The agency shall provide a method for selecting an examiner who (1) is fair, impartial, and objective, and (2) does not occupy a position which is, directly or indirectly, under the jurisdiction of the official who proposed the adverse action, will make the appellate decision, or will make the original decision when the hearing precedes the original decision, except when such an official is the head of the agency.

(c) The agency shall establish reasonable time standards for the selection of the examiner, for the conduct of the hearing, for com-

the hearing "is conducted so as to bring out pertinent facts, including the production of pertinent records."

pletion of the report of the examiner, and for decision on the appeal.

(d) If an agency desires to use an examiner from another agency, the agency shall request the appropriate office of the Commission to make arrangements. When these arrangements are made, the examiner is on a reimbursable detail to the requesting agency.

(e) The agency shall submit to the Commission for prior approval a written description of the selection method and time standards required by paragraphs (b) and (c) of this section. The agency may change the approved selection method or time standards only with the concurrence of the Commission.

§ 771.210 *Conduct of hearing.*

(a) Except as provided in paragraphs (h) and (i) of this section, attendance at a hearing is limited to persons determined by the examiner to have a direct connection with the appeal.

(b) The hearing is conducted so as to bring out pertinent facts, including the production of pertinent records.

(c) Rules of evidence are not applied strictly, but the examiner shall exclude irrelevant or unduly repetitious testimony.

(d) Decisions on the admissibility of evidence or testimony are made by the examiner.

(e) Testimony is under oath or affirmation.

(f) The examiner shall give the parties opportunity to cross-examine witnesses who appear and testify.

(g) The examiner may exclude any person from the hearing for contumacious conduct or misbehavior that obstructs the hearing.

(h) An agency may provide through a negotiated agreement with a labor organization holding exclusive recognition for the attendance at hearings under this subpart of an observer from that organization. When attendance is provided for, the agreement shall further provide that when the employee who requested the hearing objects to the attendance of an observer on grounds of privacy, the examiner shall determine the validity of the objection and make the decision on the question of attendance.

(i) When requested by the appellant and the agency does not object, the appeals examiner shall hold a public hearing. When the agency objects, the examiner may deny the appellant's request only when he determines this action to be in the best public interest. The examiner, in his discretion, may close one or more sessions of a public hearing, when he determines that this action

The constitutionality of this procedure for handling removals from the Civil Service was upheld by the Supreme

is in the best interest of the appellant, a witness, or the Government. The reasons for the examiner's decisions to deny a request for a public hearing or to close one or more sessions of a public hearing shall be made a part of the record. This paragraph does not apply to hearings held under § 771.310 of the regulations.

§ 771.211 *Witnesses.*

(a) Both parties are entitled to produce witnesses.

(b) The agency shall make its employees available as witnesses before an examiner when requested by the examiner after consideration of a request by the employee or the agency.

(c) If the agency determines that it is not administratively practicable to comply with the request of the examiner, it shall notify him in writing of the reasons for that determination. If, in the examiner's judgment, compliance with his request is essential to a full and fair hearing, he may postpone the hearing until such time as the agency complies with his request.

(d) Employees of the agency are in a duty status during the time they are made available as witnesses.

(e) The agency shall assure witnesses freedom from restraint, interference, coercion, discrimination, or reprisal in presenting their testimony.

§ 771.212 *Record of hearing.*

(a) The hearing shall be recorded and transcribed verbatim. All documents submitted to and accepted by the examiner at the hearing shall be made a part of the record of the hearing. If the agency submits a document that is accepted, it shall furnish a copy of the document to the employee. If the employee submits a document that is accepted, he shall make the document available to the agency representative for reproduction.

(b) The employee is entitled to be furnished a copy of the hearing record at or before the time he is furnished a copy of the report of the examiner.

§ 771.213 *Report of examiner.*

(a) The examiner shall make a written report of his findings and recommendations. That report shall specify which of the reasons reviewed are found to be sustained and which are found to be not sustained, together with the conclusions drawn from those findings. When the hearing is held before the original decision, the report is made to the agency official who is to make the original decision. When the hearing is held after the original decision, the report is made to the agency official who is to make the appellate decision.

Court in Arnett v. Kennedy.[8] It should be noted, however, that a majority of the Court in *Arnett* stated that an evidentiary hearing, similar to that provided for by the Civil Service regulations, was required by the Due Process Clause of the Fifth Amendment. As Justice Powell makes clear, such "an evidentiary hearing" includes "the right to present favorable witnesses and to confront and examine adverse witnesses . . . ."[9] The Justices holding to this viewpoint divided over the question whether such an evidentiary hearing must precede or may follow removal.[10]

Appellant does not quarrel with the procedures used at his hearing as far as they went, except in two respects. He claims that the Government failed to prove that he lost active reserve status "for reasons within his control" and that he was not permitted to prove that the reasons were *not* within his control. Air Force regulations support appellant's procedural contention. They state that "Air Reserve Technicians who fail to meet this obligation [of active membership] for reasons *within their control* will be separated . . . ."[11] The regulations specifically note that "[i]naptitude, unsuitability, unfitness, misconduct, or inefficiency"[12] constitute an appropriate reason for separation.

An examination of the hearing transcript makes abundantly clear that the Air Force utterly failed to prove that Rolles was fired for reasons *within his control.* In fact, as far as can be determined *from the record,* we are given no reasons for appellant's transfer from active to nonactive reserve status. Similarly, the Hearing Examiner violated Air Force regulations by prohibiting Rolles from introducing evidence to show he was *not* fired for reasons within his control. Both sides of this issue ought to have been litigated at the administrative hearing. It is especially disturbing that the errors of the Hearing Examiner were not corrected at any of the levels of review within the Civil Service Commission. As a result, we hold that the twin defects in appellant's hearing require a reversal. In light of our overall disposition of this case, the question whether the transfer was for reasons within appellant's control will of necessity be reconsidered at the administrative hearing.

## III. *The Interest in Liberty*

In effect appellant was removed from his Civil Service position as a direct result of charges made by General Hoff that amounted to accusations of dishonesty. The Supreme Court has noted that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."[13] The plurality opinion of Mr. Justice Rehnquist in Arnett v. Kennedy also recognized that "liberty" may be offended "by dismissal based upon an unsupported charge which could wrongfully injure the reputation of an employee . . . . [T]he hearing in such a case is to provide the person 'an opportunity to clear his name,' . . . ."[14]

Note 7—Continued
(b) The agency shall furnish the employee a copy of the examiner's report and a copy of the hearing record if this has not been furnished previously. The agency shall also furnish the employee's representative a copy of the examiner's report.

**8.** 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

**9.** 416 U.S. at 167, 94 S.Ct. at 1651.

**10.** Justices Powell and Blackmun, who concurred in the judgment of the Court, believed that a post-termination hearing was adequate. Justice White in his dissent and Justice Marshall in a dissent, joined in by Justices Douglas and Brennan, held that a hearing must precede removal.

**11.** App. 169.

**12.** *Ibid.*

**13.** Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

**14.** Arnett v. Kennedy, 416 U.S. at 157, 94 S.Ct. at 1646 (Opinion of Rehnquist, J., joined in by Burger, C. J., and Stewart, J.).

The vital importance of a fair hearing in which a purported offender is given an opportunity to refute the charges is underscored by the Supreme Court's very recent decision in Goss v. Lopez.[15]

 There can be little doubt that the circumstances of Rolles' removal from the Civil Service call into question his good name and integrity. The removal not only followed inexorably upon General Hoff's allegations but also was closely connected with them in time. The notice of proposed removal from the Civil Service specifically noted, as it was required to under Civil Service Regulations,[16] that his removal was ultimately based upon "unsatisfactory Military performance and *conduct* . . . ."

Although appellant was granted a post-termination trial-type hearing, he attacks the sufficiency of this hearing on constitutional due process grounds because he was not granted an opportunity to contest the charges made against him in his military capacity. In answer the Government argues that appellant is "attempting to litigate the fairness of the military decision in channels appropriate only for reviewing the fairness of civilian employment decisions."[17] It is the Government's position that the "only military or civilian agency capable of offering . . . [appellant] any real assistance in dealing with his alleged wrong, [is] the Air Force Board for Correction of Military Records."

 The errors in this position are manifest and fundamental. There is no indication in either 10 U.S.C. § 1552, the statutory basis for the Air Force Board for Correction of Military Records, or the appropriate regulations,[18] that the Board was meant to be a means by which military personnel who, as a result of a transfer such as occurred here, lose civilian positions can regain their civilian positions. It is our conclusion that the Board does not have the authority or the power to order the reinstatement with back pay of an employee to a civilian position.[19] The Board performs a purely military function and thus only has authority to review records relating to the activities and functions of military personnel while in military status. Since appellant's complaint is limited to his removal from a civilian position, we must

**15.** 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975):

School authorities here suspended appellees from school for periods of up to 10 days based on charges of misconduct. If sustained and recorded, those charges could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment. It is apparent that the claimed right of the State to determine unilaterally and without process whether that misconduct has occurred immediately collides with the requirements of the Constitution.

**16.** 5 C.F.R. § 752.02(a)(1).

**17.** Brief for Appellee, p. 16.

**18.** AF Regulation 31–3 (21 October 1970).

**19.** 10 U.S.C. §§ 1552(a), (c). It should also be noted that the Board's procedure is constitutionally suspect in two respects: (1) It does not provide for a hearing as a matter of right but only in the discretion of the Board, Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); (2) it does not provide that the proceeding be *de novo* and that no weight may be put on the original reprimand, Goss v. Lopez, 419 U.S. 565, 581 n.10, 95 S.Ct. 729, 740 n.10, 42 L.Ed.2d 725 (1975).

Our dissenting colleague refers us to Van Bourg v. Nitze, 128 U.S.App.D.C. 301, 388 F.2d 557 (1967), for the proposition that judicial review of Board decisions is available. We have examined the record in that case and noted the following reply by the Board for Correction of Naval Records (the analogous Naval Board) to Van Bourg's request for a correction:

My dear Mr. Van Bourg:

Reference is made to your application for correction of your naval record under the provisions of Title 10 U.S.C. 1552.

Under long established rules followed by the courts and administrative boards, a presumption of regularity attaches to official records. Consonant therewith, the burden of proof is on a Petitioner to show by documentary evidence that an error has occurred or an injustice has been suffered.

\* \* \* \* \* \*

Joint Appendix 56. The above form letter aptly indicates that the Board places prima facie weight on the records it reviews.

reject the Government's contention that he has failed to exhaust his administrative remedies because he has not requested a correction from the Board.[20]

It is manifest that appellant was and is being denied any real opportunity to clear his name and defend himself on the charges made by General Hoff, which set in rapid motion the chain of events. The post-termination Civil Service hearing failed to grant appellant such an opportunity; we hold that due process demands no less.

## IV. *Appellant's Property Interest*

■ In addition to his interest in liberty, appellant asserts that he is being deprived of a property interest in continued employment without due process of law. There can be no question that Congress has vested appellant's position with a sufficient degree of permanence so as to give him a "property" interest in continued employment. Six Justices have so indicated in Arnett v. Kennedy, *supra*.[21] It is conceded that appellant is in the same legal position as was the employee in *Arnett*; "he could be discharged only 'for cause.' 5 U.S.C. § 7501." As a result, "[t]he federal statute . . . conferred on him a legitimate claim of entitlement which constituted a 'property' interest under the Fifth Amendment. Thus termination of his employment requires notice and a hearing."[22]

The Air Force's response to this branch of appellant's argument is in the form of a syllogism: Appellant has lost his active reserve status; the Air Force has good reason for requiring an ART employee to be on active reserve status; therefore, the mere fact that appellant has lost that status is sufficient "cause" for his removal. Appellee's neat syllogism is undercut by the fact, previously noted, that Air Force regulations provide that only ART employees who lose their active reserve status "for reasons within their control" are to be removed from their Civil Service position. Although we can agree with the Air Force's argument that the loss of active reserve status may constitute sufficient "cause" upon which to predicate removal from the Civil Service, it must be recognized that appellant's argument is on a more fundamental level. His argument is that the Air Force cannot act against a person in one status (military), refuse to let him respond in any manner, and then turn around and proceed against him in another status (civilian) solely on the basis of the first action, and again deny him a right to respond to the underlying charges. It is obvious to us that such a procedure lacks even a semblance of due process. It is, in fact, no process at all upon which valuable property interests can be lost. If this court is here for any purpose, it is to prevent the injustice and unfairness witnessed in this case.

Thus, as an alternative holding, we reverse on the ground that Rolles had a

20. Since we hold that the Board has no jurisdiction over this civilian matter, there is no need to discuss the numerous cases in which military personnel have sought review of military determinations and in which the courts have divided over whether they must exhaust their remedies before the Board. We note in this regard that the rule in this Circuit appears to be that failure to seek relief from the Board in such cases does not preclude District Court jurisdiction; however, the District Court may, in its discretion, refrain from exercising its jurisdiction pending application to the Board. Ogden v. Zuckert, 111 U.S.App.D.C. 398, 298 F.2d 312 (1961); Turner v. Callaway, 371 F.Supp. 188 (D.D.C.1974). *See* Craycroft v. Ferrall, 397 U.S. 335, 90 S.Ct. 1152, 25 L.Ed.2d 351 (1970), vacating, Craycroft v. Ferrall, 408 F.2d 587 (9th Cir. 1969).

21. 416 U.S. at 211, 95 S.Ct. at 1670 (dissenting opinion of Marshall, J., joined by Douglas and Brennan, JJ.), 166, 95 S.Ct. 1649 (concurring and dissenting opinion of Powell, J., joined by Blackmun, J.), and 185, 94 S.Ct. 1652 (concurring and dissenting opinion of White, J.). Geneva Towers Tenants Organization v. Federated Mortgage Investors, 504 F.2d 483, 489 n. 13 (9th Cir. 1974); Terry v. United States, 499 F.2d 695, 702 (Ct.Cl.1974); Womer v. Hampton, 496 F.2d 99, 103 (5th Cir. 1974); Johnson v. Board of Regents of University of Wisconsin System, 377 F.Supp. 227, 235 (W.D.Wisc. 1974).

22. Arnett v. Kennedy, 416 U.S. at 166, 94 S.Ct. at 1650 (concurring and dissenting opinion of Powell, J., joined by Blackmun, J.).

property interest which was taken without due process of law.

## V. *Conclusion*

 Fortunately, an appropriate means by which appellant's rights can be vindicated is at hand. The trial-type hearing provided for by the regulations of the Air Force and the Civil Service Commission will provide him with a constitutionally adequate forum to counter the charges made against him.[23] Should the Air Force fail to sustain its burden of proving the allegations made by General Hoff, the blot against appellant's good name would be removed by his reinstatement to an equivalent civilian post with back pay. We therefore reverse the District Court and remand with instructions to enter an appropriate order directing the defendants to provide Mr. Rolles with a prompt hearing, either before the Civil Service Commission or the Air Force, as the appellant is entitled to elect.

Reversed and remanded.

ROBB, Circuit Judge (dissenting):

I dissent. My fundamental difficulty with the majority opinion is that it confuses the proceedings relating to Colonel Rolles as an officer in the Air Force with the proceedings relating to him as a civilian employee. As a result of this confusion the majority reaches the conclusion that the Civil Service Commission has the right and duty to re-examine disciplinary findings and actions or assignments and transfers in the military. I find that conclusion startling and I reject it.

## THE MILITARY PROCEEDINGS

The proceedings relating to Colonel Rolles as an Air Force officer, which may be called the military proceedings, had their origin in July and August 1970 when Rolles, flying by military aircraft, diverted the aircraft from its scheduled course to land him near his Maryland home; and he thereafter submitted a travel voucher requesting mileage and transportation by privately owned vehicle for the trip made by military aircraft. The Air Force alleged that the travel voucher was fraudulent. According to Rolles he repaid the amount of the voucher, $59.90. The matter was investigated by the FBI and on October 16, 1970 Rolles made a statement to the FBI about it.

On January 6, 1971 General Hoff issued an Administrative Reprimand to Rolles, reprimanding him for filing a fraudulent travel voucher and diverting an Air Force aircraft. The Reprimand stated:

> You are hereby reprimanded for the above derelictions. By causing a false claim to be presented for payment you demonstrated that you could not or would not adhere to the professional standards and integrity expected of an officer in the Air Force Reserve. Such action on your part amounted to a breach of trust and raises serious question as to the propriety of you retaining a Reserve commission. The diversion of the government aircraft demonstrated a callous and flagrant disregard of Air Force directives. Both of these derelictions reflected most adversely upon you not only as an officer but also as an individual.

On January 7, 1971 the Commander of the United States Air Force Reserve ordered that Rolles be transferred to an inactive reserve position; and on January 11, 1971 Rolles was so reassigned. On January 12, 1971 Rolles wrote the Commander of the Central Air Force Reserve Region asking whether the Reprimand was addressed to him as a civilian employee or as a military officer and what rebuttal opportunities were available. On January 15, 1971 General Hoff replied that the Reprimand had been addressed to Rolles as a military officer and that since "an administrative reprimand is not punitive" there were no grounds for rebuttal. However, General

---

**23.** The dissenting and concurring opinions in Arnett v. Kennedy, *supra*, agreed that the trial- type hearing provided for by the Civil Service regulations comported with due process.

Hoff's letter concluded, "Should you want to take further action, you may refer to AFR 31–3."

AFR 31–3, cited by General Hoff, established procedures for making application to the Air Force Board for Correction of Military Records, and for the consideration of such applications by the Board. This Board was established by 10 U.S.C. § 1552. The Air Force publication known as AF Regulation 31–3, 21 October, 1970, quotes 10 U.S.C. § 1552 and then reprints 32 C.F.R., Part 865, Subpart A—Air Force Board for Correction of Military Records. With minor variations the provisions of this Subpart A appeared in 29 Fed.Reg. 13710, October 6, 1964.

The Correction Board was empowered to correct any military record when necessary "to correct an error or remove an injustice". If the charges made by General Hoff in the Reprimand were unfounded the Board could have recommended to the Secretary of the Air Force that they be deleted or that the Reprimand be withdrawn. If the reassignment of Colonel Rolles was based on such unfounded charges or was otherwise unjust the Board could have recommended his return to the Active Reserve. Hodges v. Callaway, 499 F.2d 417 (5th Cir. 1974). Such recommendations would ordinarily be conclusive. Furthermore, if Rolles made a *prima facie* showing before the Board he would have been entitled to a hearing, at which he could be represented by counsel and could call witnesses in his behalf. *See* 32 C.F.R. § 865.8. Finally, Rolles was entitled to seek judicial review of any unfavorable final decision of the Board or the Secretary of the Air Force. Van Bourg v. Nitze, 128 U.S.App.D.C. 301, 388 F.2d 557 (1967). Nevertheless Rolles never availed himself of this source of relief. According to counsel in this court "there was no reason . . . to petition the Board".

Both the Administrative Reprimand and the reassignment to the Standby Reserve were valid under Air Force practices and regulations. The Administra-tive Reprimand issued to Rolles by Brigadier General Hoff, commander of the reserve region in which Rolles was stationed, was not a formal disciplinary action under Air Force regulations and imposed no punitive sanctions such as loss of pay or temporary confinement. The Reprimand was only General Hoff's personal expression of dissatisfaction with Rolles' military conduct. As such, it might well have been oral rather than written and thus was no different from admonishments Rolles had received in the past.

Rolles' reassignment to the Standby Reserve was pursuant to AFM 35–3. As required by 10 U.S.C. § 271, chapter 12 of AFM 35–3

> establishes procedures for continuously screening the Ready Reserve to insure that only those members who meet certain standards, possess required military qualifications, and, are immediately available for military service in the event of war, a National emergency, or when otherwise authorized by law, will be retained in the Ready Reserve.

AFM 35–3 § 12–1. Under the requirements of the regulation, transfer of a member of the Active Reserve to the Standby Reserve is authorized only for reasons specifically included in Table 12–1 of the regulation and stated on reassignment orders. AFM 35–3 §§ 12–2c, 12–11b. Rule 8 of Table 12–1, cited in Rolles' reassignment orders, provides for transfer of a member who

> does not possess the required military qualifications for his grade or specialty; or he does not meet the mental, moral, professional or physical standards of the Air Force . . . .

AFM 35–3 Table 12–1, at p. 12–13. Rolles' orders, in addition to citing Rule 8, stated as the reason for his transfer "[u]nsatisfactory military performance and conduct." Rolles' transfer thus met all the requirements of Air Force regulations.

Rolles had no due process right to a hearing before he was transferred to the

Standby Reserve; the assignment and transfer of military officers are not subject to the requirements of *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) and similar cases. *See Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); *Cortwright v. Resor,* 447 F.2d 245, 246, 254 (2d Cir. 1971), cert. denied, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972); *Pauls v. Secretary of the Air Force,* 457 F.2d 294, 297 (1st Cir. 1972).

As Mr. Justice Jackson wrote in *Orloff v. Willoughby,* 345 U.S. 93, 94, 73 S.Ct. 540:

> We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men. But judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian.

### THE CIVILIAN PROCEEDINGS

Rolles was employed by the Air Force Reserve as an Air Reserve Technician, a civilian position. The condition of this employment was that he maintain membership in the Active Reserve. Since he had been transferred to the Inactive Reserve General Hoff notified him on January 12, 1971 of the intention of the Air Force to remove him from his civilian position. The notice stated that he had been reassigned to the Inactive Reserve "for unsatisfactory Military performance under Rule 8, Table 12–1, AFM 35–3". On January 15 this notice was amended to state the reason for his reassignment as "unsatisfactory Military performance and conduct under Rule 8, Table 12–1, AFM 35–3". On January 22, 1971 Rolles responded to the notice of proposed removal as amended. In his response he characterized his reassignment to the Inactive Reserve and his proposed removal from his Civil Service job as "unjustified, unwarranted, and unsubstantiated". He related his version of the events leading to his January 6, 1971 Reprimand.

On February 11, 1971 Rolles was removed from his Civil Service position and on February 19 his civilian employment was terminated.

The notice of removal of February 2, 1971 informed Rolles that he might appeal through Air Force appeals procedures and thereafter, if unsuccessful, to the Civil Service Commission. He appealed under the Air Force procedures. At the hearing before an examiner Rolles attempted to challenge the reasons for his removal from active reserve status. The examiner declined to receive evidence on this issue. He wrote:

> f. We also find that the appellant's loss of membership was for a reason within his control. As shown previously, management presented documentary evidence that the reassignment action of 11 January 1971 was based upon an official determination of unsatisfactory military performance and conduct, (Mgt Exs 6a and 6b). And, even though the appellant denies such deficiencies, and alleges a lack of opportunity for review of such findings through military proceedings, we cannot review the merits thereof for, like the reassignment action it precipitated, that judgment also was one which applied to the appellant in his military capacity. And the alleged lack of opportunity for military review is immaterial since, even if true, that neither rebuts the accuracy of management's determination nor permits substitution of civilian procedures to review it. Therefore, since nothing in the record nullifies or contravenes management's evidence, there is no basis upon which to deny the existence or validity of the determination in question. And it hardly can be held that the appellant had no control over the quality of his military performance or conduct.

The removal of Rolles from his civilian employment was sustained.

From this adverse decision by the Air Force Rolles appealed to the Civil Service Commission. Again he attempted to challenge the reasons for his reassignment and again he was unsuccessful. The opinion of the Chicago Region of the Civil Service Commission stated:

As previously indicated, the appeal in this case appears to be based primarily on whether the reasons utilized by the Air Force Reserve in transferring appellant to an inactive reserve status on January 11, 1971, were valid; and as noted elsewhere within this decision, the validity and sufficiency of these reasons, whatever they may be, constitute conditions which are not reviewable by the Commission. Appellant's reserve status was, and is, rightfully within the exclusive control of the military, and the Commission has no authority to go into matters beyond the military decision to terminate appellant's active reserve membership.

The Civil Service Board of Appeals and Review sustained the decision of the Chicago Region. The Board said:

[T]he Commission's policy with respect to the scope of appellate review by the Commission of a removal of an ART employee contemplates that membership in the active reserve is a condition of his employment, and that his loss of active reserve membership for military reasons within his control is a cause of action for removal in the interest of promoting the efficiency of the service. "Reasons within his control" within the meaning of the policy are reasons other than age or physical disability. Thus the agency in basing Mr. Rolles' transfer to the inactive reserve for "unsatisfactory military performance and conduct" dropped him from active reserve membership for reasons within his control.

\* \* \* \* \* \*

In summary, the Board finds that Mr. Rolles' loss of active reserve membership was not arbitrary or capricious,

since the loss appears to have been based on solely military reasons such as a military reprimand; that the loss was for reasons within Mr. Rolles' control; that the loss is neither indicated nor alleged to have been based on non-military reasons; and that through his loss of active reserve membership he no longer met an essential condition of his employment.

Rolles then brought this action in the District Court.

Without indulging in an extended discussion I draw these conclusions from the foregoing summary of the military and civilian proceedings.

1. Rolles' avenue of appeal from the military decision to reassign him was to the Board for the Correction of Military Records. The Board could have recommended that the Reprimand be expunged and that he be returned to the Active Reserve. That avenue is still open to Rolles if the Board believes that it would be in the interest of justice to excuse his failure to file his appeal within the prescribed three years. 32 C.F.R. § 865.7(b).

2. The Civil Service Commission, a civilian agency, has no jurisdiction to reexamine disciplinary findings and actions or assignments and transfers in the military; specifically, the Commission has no jurisdiction to place upon the military the "burden of proving the allegations made by General Hoff" in a military context. In the civilian proceedings those allegations and General Hoff's action were *res adjudicata*. Like the courts, the Civil Service Commission does not run the Army or the Air Force.

3. The Commission found that Rolles' loss of membership in the Active Reserve was for military reasons within his control. It is conceded that Rolles was reassigned as a result of the Military Reprimand based upon his conduct as a military officer. I think the Commission was right in its interpretation that "reasons within his control" within the meaning of the Civil Service policy are reasons other than age or physical disability. Rolles was not reassigned because of

age or physical disability, and his conduct as an officer was certainly a matter within his control.

I would affirm the judgment of the District Court.