George POLOS

v.

The UNITED STATES.

Nos. 6–75, 405–77.

United States Court of Claims.

April 30, 1980.

Hermann Ivester, Little Rock, Ark., attorney of record, for plaintiff; Friday, Eldredge & Clark, Little Rock, Ark., of counsel.

Samuel Borzilleri, Washington, D. C., attorney of record for plaintiff in related case, Ct. Cl. No. 547–78, also presented argument.

Stephen G. Anderson, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and DAVIS, NICHOLS, KASHIWA, KUNZIG, BENNETT and SMITH, Judges, en banc.

BENNETT, Judge.

Plaintiff, George Polos, is a former member of the Arkansas Air National Guard. His membership and connected civilian employment with the Guard was terminated after his discharge from active duty. Plaintiff sues for reemployment in his civilian capacity and back pay or, alternatively, for a civilian disability annuity, plus various employee benefits and attorney's fees. We hold that plaintiff is entitled to back pay

and any other employee benefits mandated by law but only for a period of some 80 days after his release from active duty. We further hold that plaintiff is not entitled to a civilian disability annuity on the present record, or to recover attorney's fees. During our consideration of plaintiff's claim for a civilian disability annuity, we have reviewed our prior decision in *Allen v. United States*, 571 F.2d 14, 215 Ct.Cl. 524 (1978), and have determined that this decision should be overruled.

Plaintiff enlisted in the Arkansas Air National Guard on January 6, 1947, and was employed by the Guard as a civilian technician (then called caretaker) on March 12, 1947. Plaintiff served in this position continuously from that date until January 25, 1968, except for time spent on active duty with the Air National Guard. On January 25, 1968, plaintiff was ordered to active duty along with his Guard unit. While on active duty in Arkansas, plaintiff performed the same duties as he did while serving in his civilian capacity.

During plaintiff's tour of active duty, the National Guard Technicians Act of 1968, Pub.L.No.90–486, 82 Stat. 755 (codified at 32 U.S.C. § 709 (1976)), was passed by Congress and became effective on January 1, 1969. The Act converted federally funded state Guard caretaker positions, such as plaintiff's, to federal positions called civilian technicians. State employees occupying these positions became federal employees. The Act also imposed a mandatory requirement that the technicians be members of the Guard holding the military rank and grade comparable to their civilian duties.[1]

Because of problems with his feet, plaintiff underwent a physical examination at Wilford Hall United States Air Force Hospital in October 1968. The Medical Board approved the report of the examining physician that plaintiff was qualified for worldwide service with the Guard and recommending his retention. The Medical Board's report was forwarded to a Physical Evaluation Board, which considered plaintiff physically unable for worldwide assignment because of his intermittent "claudication" or limping.[2] Plaintiff requested a formal hearing by the board and that he be found temporarily disabled so that he could retain his membership in the Guard and continue his employment as a civilian technician indefinitely. Alternatively, if the board recommended his discharge, plaintiff requested a 60-percent disability rating.[3] The final report of the Physical Evaluation Board rated plaintiff's disability at 60 percent and recommended his separation.

On December 18, 1968, the Secretary of the Air Force approved the recommendation of the Physical Evaluation Board and ordered the effective date of plaintiff's retirement to be January 15, 1969. Plaintiff was relieved from active duty on Janu-

---

[1]. The pertinent sections of the Act as codified at 32 U.S.C. § 709 read as follows:

"(b) Except as prescribed by the Secretary concerned, a technician employed under subsection (a) shall, while so employed, be a member of the National Guard and hold the military grade specified by the Secretary concerned for that position.

\* \* \* \* \* \*

"(e) Notwithstanding any other provision of law and under regulations prescribed by the Secretary concerned—

"(1) a technician who is employed in a position in which National Guard membership is required as a condition of employment and who is separated from the National Guard or ceases to hold the military grade specified for his position by the Secretary concerned shall be promptly separated from his technician employment by the adjutant general of the jurisdiction concerned; \* \* "

[2]. No board has ever specifically considered whether plaintiff was at any time physically unable to perform the duties of his civilian employment, which primarily involved paperwork.

[3]. Defendant has tried to impute improper motives to plaintiff in his requests with respect to a 60-percent disability rating and to the date of his retirement from the Air National Guard. Plaintiff's testimony at the Physical Evaluation Board hearing shows none of the guile of the barracks lawyer that defendant portrays plaintiff to be. In addition, plaintiff's prompt action in seeking restoration to his civilian position after his release from active military duty shows that such restoration has always been his foremost goal.

ary 14, 1969, and was assigned to the Retired Reserve on January 15, 1969. A written order was issued February 4, 1969, purporting to confirm prior verbal orders for plaintiff's honorable discharge from the Arkansas Air National Guard effective January 15, 1969.

On January 15, 1969, plaintiff wrote the Arkansas Guard seeking restoration to his civilian employment. This request was denied by a letter dated March 6, 1969, from the Adjutant General for the State of Arkansas. The Adjutant General concluded that plaintiff could not be reemployed in his civilian position because he was no longer a member of the Air National Guard and was physically unqualified for such membership. Plaintiff unsuccessfully appealed the decision of the Adjutant General to the Regional Director of the Civil Service Commission and to the Board of Appeals and Review of the Commission. Plaintiff filed suit in the United States District Court for the Eastern District of Arkansas seeking back pay and other ancillary relief. The district court rendered a decision favorable to plaintiff but was reversed by the Court of Appeals for the Eighth Circuit on jurisdictional grounds. *Polos v. United States*, 556 F.2d 903 (8th Cir. 1977). Pursuant to the Eighth Circuit's order of June 16, 1977, the case was transferred to this court and consolidated with plaintiff's petition filed here on January 9, 1975.

Plaintiff is presently receiving disability pay for his service with the Arkansas Air National Guard. He has never received any back pay or severance pay from the Federal Government because of the position of the Commission that plaintiff was never a federal employee. For the same reason, he was never examined to determine if he qualified for a civilian total disability annuity.

Plaintiff contends that by virtue of either 5 U.S.C. § 3551 (1976) or 50 U.S.C. App. § 459(b) (1970) (current version at 38 U.S.C. § 2021(a) (1976)) he was entitled to reemployment in his civilian position upon his request to the Guard therefor on January 15, 1969. Defendant has changed his posi-

tion several times before the district court, the Eighth Circuit, and this court as to whether plaintiff was entitled to be restored to his employment as a civilian technician. Its final position was that plaintiff was entitled to restoration and back pay for the period from January 15, 1969, to at least February 4, 1969, when the paperwork was completed to retire plaintiff from the Arkansas Air National Guard. Defendant believes that as a matter of practice plaintiff should have been restored to his civilian duties upon his release from active military duty just as if he had returned from a furlough. While on active duty, plaintiff was performing the same duties as he would in his civilian capacity. Therefore, in defendant's opinion, plaintiff's reemployment rights under 50 U.S.C. App. § 459(b) are wholly irrelevant because such rights are conferred only upon an individual who "leaves a position" to enter military service.

The issues remaining for decision are:

(1) Whether plaintiff is entitled to back pay and any other employee benefits for any period after February 4, 1969;

(2) whether plaintiff is entitled to a civil service total disability annuity from the proper date of the termination of his employment as a civilian technician; and

(3) whether plaintiff is entitled to recover attorney's fees.

I

■ Plaintiff has requested the court to award him back pay and other employee benefits from January 15, 1969, to date of judgment and to order the United States to restore him to his civilian employment. Defendant's view is that plaintiff can recover back pay for, at most, a period from January 15, 1969, to February 4 or April 5, 1969. The latter date is 30 days after March 6, 1969, when plaintiff was officially notified by the Adjutant General that his request for civilian reemployment was denied.

32 U.S.C. § 709(e)(6) provides:

(6) a technician shall be notified in writing of the termination of his employment as a technician and such notifica-

tion shall be given at least thirty days prior to the termination date of such employment.

Defendant has adopted a rather ambivalent position as to whether the 30-day notice was required in plaintiff's case. Initially, defendant argued that no notice was necessary because such notice was intended to permit time for an appeal and plaintiff had no right of appeal either internally [4] or to the courts.[5] The 30-day notice provision is later admitted by defendant to be an "absolute requirement." A review of the language and structure of the statute indicates that no other interpretation is feasible. 32 U.S.C. § 709(e)(6) is not limited in any way to separations for cause, for which an appeal would clearly be available. The requirement of a 30-day notice applies to all separations from employment as a civilian technician under any clause of 32 U.S.C. § 709(e).[6]

It is therefore necessary to determine the effect of defendant's failure to give plaintiff proper notice on plaintiff's claim for back pay up to the present date. Plaintiff was in fact on notice, more than 30 days prior to the February 4, 1969, order confirming termination of his Guard membership, that the loss of such membership would necessarily result in the loss of his civilian employment as well. At the Physical Evaluation Board hearing, plaintiff exhibited his awareness that a separation for disability from the National Guard would result in the loss of his civilian position. The letter of March 6, 1969, defendant contends, constituted adequate notice even if no action prior to that time could be considered as sufficient. This letter from the Adjutant General of the Arkansas Guard advised plaintiff that he could not be reemployed as a civilian technician because he was no longer a member of the Guard. We agree with defendant that although the letter explains the reasons why plaintiff could not be reemployed, the reasons given would apply equally well to why plaintiff's continuing civilian employment would have to be terminated. Regardless of this letter, it would be a miscarriage of justice to award plaintiff over 10 years of back pay because of a failure to give the required technical notice when he was on actual notice and suffered no harm from the lack of formal notice.

Although plaintiff was on actual notice prior to March 6, 1969, we hold that the 30-day notice period should run from this date. Plaintiff should not be treated less favorably than a civilian technician who was given proper notice. Paperwork delays are common, and proper notice might not be given instantaneously. Any doubt as to when notice would have been given if the Guard had followed technically proper procedures should be resolved in favor of plaintiff. The date of the March 6, 1969, letter is a reasonable approximation of the date on which formal notice was or would have been given.

Plaintiff also claims that he is entitled to back pay up to the present date based on 50 U.S.C. App. § 459(c)(1) (1970) (current version at 38 U.S.C. § 2021(b)(1) (1976)), which provides that any person reemployed in a position in accordance with 50 U.S.C. App. § 459(b) shall not be discharged from such position without cause within 1 year after such reemployment. It has been established that a statute vesting in an employee

---

**4.** Although 32 U.S.C. § 709(e)(5) provides that "a right of appeal * * * shall not extend beyond the adjutant general of the jurisdiction concerned," this provision does not create a right of appeal to the adjutant general in the case of a termination of civilian employment under 32 U.S.C. § 709(e)(1). It merely limits any existing right of appeal to the adjutant general.

**5.** See 32 U.S.C. § 709(e)(5); *Tennessee v. Dunlap*, 426 U.S. 312, 96 S.Ct. 2099, 48 L.Ed.2d 660 (1976). It is worth noting that despite the unavailability of any appeal, 30-day notices were given to the civilian technicians in *Tennessee v. Dunlap* and in *Allen v. United States*, 571 F.2d 14, 215 Ct.Cl. 524 (1978).

**6.** See H.R.Rep.No.1823, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin. News pp. 3318, 3331, which states: "The bill provides that a technician, upon *any* termination of his employment, shall be notified in writing at least 30 days prior to any termination." [Emphasis added.]

the right to be discharged only for cause vests in him a property interest protected by the fifth amendment. *Arnett v. Kennedy*, 416 U.S. 134, 166, *also* 209, 94 S.Ct. 1633, 1650, also 1671, 40 L.Ed.2d 15 (dissenting opinion) (1974); *Rolles v. Civil Service Commission*, 512 F.2d 1319, 1327 (D.C.Cir. 1975). Accordingly, plaintiff argues that the deprivation of his property right in continued employment for 1 year required notice and a hearing. The failure of defendant to provide plaintiff with such notice and a hearing, plaintiff concludes, voids the termination of his employment and entitles him to back pay up to the present.

For the purposes of this opinion, we assume without deciding that plaintiff was entitled to reemployment under 50 U.S.C. App. § 459(b). Despite this assumption, we cannot hold for plaintiff on this issue. Plaintiff places inappropriate emphasis on the fact that he was not given notice and the opportunity for a hearing between the time that he should have been reemployed and the time of the termination of his employment as a civilian technician. Plaintiff had notice and a formal hearing with respect to his disability before he was released from active duty with the Air National Guard. Plaintiff was aware at that time that his continued civilian employment depended upon the decision of the Physical Evaluation Board. An additional hearing by the Arkansas Air National Guard would have served no purpose as the Adjutant General had no choice under the statute but to terminate plaintiff's employment. It was improper for the Guard not to reemploy plaintiff in his civilian position until he was properly terminated after due notice. Yet, it is certain in view of the reasons given for the erroneous refusal of reemployment that if plaintiff had been reemployed, the Adjutant General would have recognized his duty to have plaintiff promptly separated from his technician employment pursuant to 32 U.S.C. § 709(e)(1).

Because of the hearing accorded to plaintiff by the Air National Guard, the clear position of the Adjutant General on plaintiff's disqualification to hold a position as a civilian technician, and the mandatory provisions of sections 709(b) and 709(e)(1) of Title 32, United States Code, any technical violation of plaintiff's procedural rights to notice and a hearing constitutes harmless error. In *Carey v. Piphus*, 435 U.S. 247, 260 & n. 15, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978), the Supreme Court disapproved of the view taken by some courts that public employees holding property interests in their jobs are entitled to recover damages because of a lack of procedural due process even if they would have been terminated after a proper hearing. *See also Hernandez del Valle v. Santa Aponte*, 575 F.2d 321, 324 (1st Cir. 1978); *Hostrop v. Board of Jr. College Dist. No. 515*, 523 F.2d 569, 579 (7th Cir. 1975), *cert. denied*, 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976); *Giordano v. Roudebush*, 448 F.Supp. 899, 907–09 (S.D. Iowa 1978). An award of back pay and other employee benefits up to the present date would constitute a windfall to plaintiff, rather than compensation for any injuries actually caused by a deprivation of procedural rights. Plaintiff lost no substantial right of appeal. All that he lost was back pay up to April 5, 1969, the proper date on which the termination of his employment as a technician should have been effected.

We therefore conclude that plaintiff is entitled to recover back pay and other attendant employee benefits for the period from January 15, 1969, to April 5, 1969.[7]

## II

Plaintiff has alternatively requested that the court hold him to be entitled to a civil service annuity for total disability beginning upon the effective date of the termination of his civilian employment. Plaintiff's situation falls squarely within the scope of our previous decision in *Allen v. United*

---

7. Because of our holding, we need not consider plaintiff's contention that he is entitled to an annuity under 5 U.S.C. § 8333(b) (1976). Plain-

tiff's contention is admittedly dependent on a ruling that plaintiff is entitled to back pay of no less than one year.

*States, supra.* However, after en banc reconsideration of that decision, we have concluded that the majority opinion of the panel in that case was erroneous.

In order to receive a disability annuity under 5 U.S.C. § 8337(a) (1976) (amended 1978 upon the creation of the Office of Personnel Management to replace the Civil Service Commission), an employee must complete 5 years of civilian service[8] and must be found by the Civil Service Commission to have become "disabled" within the meaning of 5 U.S.C. § 8331(6) (1976). Section 8331(6) provides:

> (6) "disabled" and "disability" mean totally disabled or total disability, respectively, for useful and efficient service in the grade or class of position last occupied by the employee or Member because of disease or injury * * *

And 5 U.S.C. § 8347(c) (1976) (also amended 1978) further states:

> (c) The Commission shall determine questions of disability and dependency arising under this subchapter. The decisions of the Commission concerning these

matters are final and conclusive and are not subject to review. * * *

■ Plaintiff was serving in two positions, one as a member of the Guard and one as a civilian technician. He is now suing for disability retirement pay with respect to his *civilian* position. The statutes quoted above govern plaintiff's eligibility for civilian disability retirement. To be eligible, plaintiff must be "totally disabled * * * for useful and efficient service" in his civilian position. Plaintiff's obligations as a civilian technician were not the same as those of an Air National Guardsman on active duty in that he was not subject to worldwide duty as a civilian. Plaintiff has only been found to be physically disabled for worldwide duty as a member of the Guard. No one, including the Civil Service Commission, has ever determined whether plaintiff was totally disabled for continued service in his civilian employment. The failure of the Commission to make this determination was based on its erroneous view of the law as applied to plaintiff.[9]

8. Technicians performing service on or after the effective date of the National Guard Technicians Act are credited with their past service under *section 3(c)* of the Act. Thus, a technician can be immediately eligible for disability retirement after the effective date of the Act, Jan. 1, 1969. *See* H.R.Rep.No.1823, *supra*, [1968] U.S.Code Cong. & Admin.News at 3329, which states:

> "Normally, in order to be eligible for civil service retired pay, technicians coming under the bill would be required to contribute 6½ percent of their pay over a period of 1 year. After the 1-year period technicians, if otherwise eligible, could be retired under civil service based on the retroactive credit for past technician service plus the 1 year of contributory service.
>
> "The 1-year contribution required, however, would not apply to civil service death benefits and to those retiring for physical disability. In these two instances payments could be made immediately without regard to the 1-year rule. * * * *"

9. The Commission determined that plaintiff was not eligible for disability retirement for two reasons. First, plaintiff was on military furlough on and after the effective date of the National Guard Technicians Act (Jan. 1, 1969) and was never restored to his civilian position. The date of separation from civilian service of an employee who is not restored is the last day

of active duty preceding the furlough. Therefore, the Commission found that plaintiff was not entitled to any credit for past service under *section 3 of the Act* because he did not perform service on or after the effective date of the Act. Second, plaintiff did not receive his disability while employed in a position subject to the retirement system. In the Commission's view, plaintiff would therefore not be entitled to disability retirement even if he was restored to duty.

The first ground relied upon by the Commission is no longer valid in view of defendant's concessions and our further holding that plaintiff was entitled to restoration to his civilian employment through April 5, 1969. The Commission's second reason is erroneous in view of section 3 of the Act. Since plaintiff was entitled to credit for his prior service before the effective date of the Act, any disability received during such service must be treated as received while a federal employee subject to the retirement system. *See* H.R.Rep.No.1823, *quoted in* note 8 *supra*.

Review of the errors leading us to remand plaintiff's case is not barred by the finality clause of 5 U.S.C. § 8347(c). We have held that a court can set aside the Commission's determination where, as here, "there has been a substantial departure from important procedural rights, a misconstruction of governing legislation, or some like error 'going to the

This court cannot itself make a determination of disability despite the Commission's failure because 5 U.S.C. § 8347(c) vests the responsibility to judge medical evidence of physical disability exclusively in the Commission. *See, Scroggins v. United States,* 397 F.2d 295, 299–300, 184 Ct.Cl. 530, 537, *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968). However, we can remand the case to the successor agency to the Commission, the Office of Personnel Management, with instructions that it must fulfill the statutory mandate to determine the extent of plaintiff's disability and entitlements, if any, to civilian benefits, upon application by plaintiff. 5 U.S.C. § 8337(a).

Plaintiff and the majority opinion in *Allen* conclude that the National Guard Technicians Act somehow modified 5 U.S.C. § 8347(c), which, as noted above, vests exclusive authority in the Commission to determine questions of disability for the purposes of civilian retirement pay. There is no express provision in the Act making such a modification, and there is no express authorization for a military board or this court to pass on such questions in derogation of the Commission's exclusive authority merely because a technician is involved. There is also no express provision altering 5 U.S.C. § 8331(6) which requires an employee to be totally disabled in order to receive a civilian disability annuity. It is a "'cardinal rule * * * that repeals by implication are not favored.'" *Morton v. Mancari,* 417 U.S. 535, 549–50, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974), *quoting Posadas v. National City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936). "[T]he intention of the legislature to repeal must be clear and manifest * * *." *Posadas v.*

*National City Bank, supra,* 296 U.S. at 503, 56 S.Ct. at 352. "'In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.'" *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 189–90, 98 S.Ct. 2279, 2299, 57 L.Ed.2d 117 (1978), *quoting Morton v. Mancari, supra,* 417 U.S. at 550, 94 S.Ct. at 2482, or "if the later act covers the whole subject of the earlier one and is clearly intended as a substitute * * *." *Posadas v. National City Bank, supra,* 296 U.S. at 503, 56 S.Ct. at 352.

■ There is no showing in this case of any intention of Congress to repeal or modify 5 U.S.C. §§ 8331(6) and 8347(c). On the contrary, the legislative history of the National Guard Technicians Act supports our conclusion that exclusive authority over civilian disability retirement remains in the Commission. S.Rep.No.1446, 90th Cong., 2d Sess. 13 (1968),[10] says:

*Involuntary retirement because of failure to meet military physical standards*

Generally, standards for retirement for physical disability under the civil service laws require disabilities to a greater extent than the minimum standards required for disability retirement under the military laws. Civil service provisions generally require total disability for physical retirement. One element of the required concurrent military Guard status for civilian employment is the meeting of military physical standards. *It can be anticipated that instances will occur where technicians would not be eligible for physical disability civil service retire-*

heart of the administrative determination.'" *Gaines v. United States,* 158 Ct.Cl. 497, 502, *cert. denied,* 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962); *see also McFarland v. United States,* 517 F.2d 938, 942–43, 207 Ct.Cl. 38, 46–47 (1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); *Scroggins v. United States,* 397 F.2d 295, 297, 184 Ct.Cl. 530, 534, *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968).

**10.** Although this language from the Senate report was omitted from the later House report,

H.R.Rep.No.1823, *supra,* no changes in the pertinent statutory language were made. Under the cases cited *supra,* plaintiff must make an *affirmative* showing that Congress intended to modify 5 U.S.C. § 8347(c). It cannot be inferred that the House just possibly might have intended a different result merely because of the omission of the quoted language in the Senate report, when there was no discussion or action in the House to support such speculation.

*ment but would at the same time fail to meet the military physical standards.*

If an employee fails to meet military physical standards even though he would be physically qualified for continued civil service employment, he will be eligible for civil service retirement under the involuntary, separation provisions if he has completed 25 years of service or is age 50 and completed 20 years of service.

If, however, the employee has not met any of the foregoing age and length-of-service requirements, *he would not be retired for physical disability under the Civil Service Act but would be separated from service with civilian severance pay.*

The following might be such instances—failure .to permit reenlistment for medical reasons, or *removal of Reserve officer technician from active status because of failure to pass military medical exam.* [Emphasis added.]

Furthermore, there is no irreconcilable conflict between the Act and 5 U.S.C. §§ 8331(6) and 8347(c). All that the Act provides is that a person must be a member of the National Guard in order to be employed as a technician. Plaintiff lost his membership in the Guard because he was physically disabled for worldwide duty as a member of the Guard. However, his civilian employment was not terminated because he became physically disabled for continued performance of his civilian duties; it was terminated because he lost his membership in the Guard.[11] It must be left to the successor agency of the Civil Service Commission to determine whether plaintiff also suffers from a total disability with respect to his civilian employment.

The result may seem unfair if the Commission's successor does not provide plaintiff with disability retirement even though he has lost his job. However, any unfair-

ness cannot be said to rise to the level of an irreconcilable conflict. In fact, the result is consistent with the general scheme of civilian disability retirement. In *Piccone v. United States,* 407 F.2d 866, 872, 186 Ct.Cl. 752, 762–63 (1969), we recognized the possibility under the civilian retirement system that "a person can be too disabled to continue work, but not disabled enough to qualify for disability retirement." We stated: "This may well be an unfortunate result, but it is provided for by the present laws and regulations (footnote omitted)."

A greater inequity would occur if the court were to mix the systems of military and civilian retirement in the manner suggested by plaintiff. Plaintiff was separated from the Guard because of a 60-percent disability for military duty worldwide. A military disability annuity is reduced proportionately to reflect retirement with less than a 100-percent disability. Civilian disability annuities cannot be adjusted to reflect the degree of disability of the employee, but are instead payable in full since the recipient must be "totally disabled" in order to be eligible under 5 U.S.C. § 8331(6). It would be obviously unfair and discriminatory to other civilian Government employees for plaintiff to receive a total disability annuity based only on the military's determination of a 60-percent disability. We cannot ascribe such an intent to the Congress. Plaintiff is entitled, upon his application, to an independent judgment by the Office of Personnel Management as to the extent of his disability, but he is not entitled to a civilian annuity for total disability based on the findings made by the military Physical Evaluation Board of a 60-percent disability to perform military duties.

### III

■ Plaintiff has requested an award of attorney's fees based on 50 U.S.C. App.

11. Plaintiff suggests that no technician could ever become eligible for civilian disability retirement if we hold the termination of plaintiff's civilian employment to result from disqualification rather than disability. This is incorrect since eligibility for disability retirement under 5 U.S.C. § 8337(a) does not depend on the technicality of whether a technician was separated because of the loss of his Guard

membership or a disability with respect to his civilian employment. If a technician loses his Guard membership (and subsequently his civilian employment) because of a disability which, in the opinion of the Office of Personnel Management, would also totally disable the technician from performing his civilian duties, he would be entitled to receive civilian disability retirement.

§ 459(d) (1970) (current version at 38 U.S.C. § 2022 (1976)). This statute provides in part that "[u]pon application to the United States attorney or comparable official * *, by any person claiming to be entitled to" reemployment benefits with a private employer,[12] "such United States attorney or official, if reasonably satisfied that the person so applying is entitled to such benefits, shall appear and act as attorney for such person in the amicable adjustment of the claim or in the filing of any motion, petition, or other appropriate pleading and the prosecution thereof * * *." Plaintiff contends that this statute somehow provides for the recovery of attorney's fees in suits against the United States for reemployment. His reasoning is that a failure to provide some equivalent form of assistance to persons seeking reemployment with the Federal Government would constitute discrimination in violation of the equal protection clause of the fourteenth amendment to the United States Constitution. Since statutes should be construed so as to uphold their constitutionality, if possible, *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971), plaintiff asks us to construe 50 U.S.C. App. § 459(d) to make some provision for persons seeking federal reemployment.

 Under 28 U.S.C. § 2412 (1976), attorney's fees may not be awarded against the United States absent clear statutory authority. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 265–68, 95 S.Ct. 1612, 1626, 44 L.Ed.2d 141 (1975). Direct language is required to waive the as-sertion of sovereign immunity in 28 U.S.C. § 2412. See examples cited in *Shannon v. U. S. Dep't of Hous. & Urban Dev.*, 577 F.2d 854, 856 (3d Cir.), *cert. denied*, 439 U.S. 1002, 99 S.Ct. 611, 58 L.Ed.2d 677 (1978). There is no language in the statute relied upon by plaintiff which can conceivably support the interpretation urged by him. The statute contains no mention of attorney's fees but merely provides that a United States attorney can *at his discretion* provide assistance to persons seeking nonfederal reemployment. Presumably, because of ethical conflicts of interest, the statute does not provide assistance through a United States attorney to a person seeking reemployment with the Federal Government. Therefore, we conclude that plaintiff is not entitled to recover attorney's fees.[13]

CONCLUSION

Accordingly, plaintiff's motion is granted in part with respect to the issue of back pay and denied in all other respects, and defendant's cross-motion for summary judgment is granted with respect to the issue of attorney's fees and denied in all other respects. The case is remanded to the Office of Personnel Management to determine in accordance with this opinion (1) the amount of back pay owed to plaintiff and plaintiff's eligibility for various employee benefits for the period in which he should have been restored to civilian employment, subject to lawful offsets, (2) whether plaintiff is entitled to a civilian disability annuity if he applies for it, and (3) if he is not entitled, the amount of civilian severance pay due plaintiff. Further court proceedings relating to plaintiff's claim are stayed for 6

---

12. The current version, 38 U.S.C. § 2022, also applies to persons seeking reemployment with a state government.

13. Faced with this statute, the most that any court could do, if it were to agree with plaintiff's claims of unconstitutionality, would be to strike down the provision of assistance to persons seeking nonfederal reemployment. This court does not have jurisdiction to entertain any such claim of unconstitutional discrimination. *United States v. Testan*, 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–953, 47 L.Ed.2d 114 (1976); *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). There is no possibility here of severing any conceivably unconstitutional portions of the statute while leaving a statutory claim which this court could then recognize, as was done in *Gentry v. United States*, 546 F.2d 343, 346–48, 212 Ct.Cl. 1, 7–10 (1976). *But see United States v. Clark*, —— U.S. ——, ——, 100 S.Ct. 895, 903, 63 L.Ed.2d 171 (1980).

months pending a new determination by the Office of Personnel Management. The attorney of record for plaintiff is designated to advise the court, by letter to the trial judge (with copy to opposing counsel), of the status of proceedings on remand, such advice to be given at intervals of 90 days or less, beginning with the date of this opinion.

DAVIS, Judge, concurring in which SMITH, Judge, joins:

I join in Parts I and III and the "Conclusion" of the court's opinion, and I concur in the result of Part II, but not in all of the reasoning of that part. On the issue discussed in Part II, I agree with Judge Nichols that the legislative history cited by the court has little bearing, and that Congress as a whole left it to the courts to decide the question.

I concur with the court in holding that plaintiff is entitled to a civil service annuity only if he meets civil service disability standards (as determined by the successor to the Civil Service Commission). My basis for taking that position in this case is the combination of (i) the wording of the civil service retirement statute with (ii) the description of the grade and class of the National Guard technician position last occupied by plaintiff. The civil service retirement statute (5 U.S.C. § 8331(6)) requires total disability "in the grade or class of position last occupied by the employee." I take this to be a reference, not merely to the precise or particular civilian position held by the claimant, but to the broader, more general "grade or class of position"—if under the civil service classification system the precise or particular position formed part of such a broader grade or class.

In this instance we have been informed that plaintiff's National Guard technician position did form part of a broader classification. When National Guard technician positions were federalized on January 1, 1969, plaintiff's position was established as a GS–085–7. The GS–085 classification is a "guard series" covering various sorts of protective services involving federal buildings, control over vehicular traffic on government property, and guarding aliens involved in deportation proceedings. Plaintiff's grade was 7 and the GS–085 series contemplated the use of grade 7 if appropriate.

In January 1974 the position plaintiff last held was reclassified to class GS–080–7, Security Assistant GS–7. Like the "Guard series" (GS–085), the "security administration series" (GS–080) covered a substantial number of positions in the field of security administration within the federal government generally.

For me, the controlling factor is that neither of these two series (GS–085 and GS–080) was or is limited to National Guard technicians, or tailored to such National Guard positions alone. On the contrary, both series covered and cover a multitude of other civilian jobs within the federal government, and there appear to be substantial numbers of persons other than National Guard technicians who hold and held positions in those series.

As I have stressed, the Civil Service retirement act (5 U.S.C. § 8331(6)) measures civil service disability by disability to serve in the general "grade or class of position last occupied"—rather than by the precise, exact, or particular position—and I am compelled to conclude, from the information available to us, that the "grade or class of position last occupied" by Polos was broader than and different from the position of National Guard technician. The grade and class involved either guard positions or security assistant positions—neither of which was tied to the National Guard or to the military. Wholly civilian positions fell and fall within those classes. It follows, in my view, that membership in the National Guard was not at all a requirement of the civilian "grade or class of position last occupied" by plaintiff. On that basis, *Allen v. United States*, 571 F.2d 14, 215 Ct.Cl. 524 (1978), cannot stand as a general proposition applicable to all National Guard technicians or be applied to the present case.

It may be that, if Judge Nichols appraises his physical status correctly, plaintiff is in

fact disabled for a GS–085–7 position as well as for a GS–080–7 position. But the court's "Conclusion" (which I join) leaves that issue open if plaintiff applies for a civilian disability annuity.

NICHOLS, Judge, dissenting:

Respectfully, I dissent. I agree with much of what the court says, considered apart from the result. I would not overrule *Allen v. United States*, 571 F.2d 14, 215 Ct.Cl. 524 (1978).

At the outset, I invite attention to the somewhat disingenuous statement of the court as to the nature of plaintiff's ailments that led to his retirement from the military on disability of 60 percent. It says he had "problems with his feet" and was deemed unfit for worldwide service because of intermittent "claudication" which the court correctly translates as "limping." This would suggest that the military doctors were extremely generous in awarding plaintiff a 60 percent disability and why should he want a civilian annuity besides? In fact, the medical report (Ex. B to Cross Motion) under the heading "Present illness" reveals that plaintiff had had serious cardiovascular problems. He underwent sympathectomies as long ago as 1955 because of symptoms of thrombo angiitis obliterans evidenced by extreme sensitivity of feet to cold, paresthesias of feet, and absent pulses in both feet. To translate, his arteries were closing up and cutting off the blood from his lower legs. The sympathectomy is more than minor surgery if less than a heroic remedy. It involves cutting nerves that contract blood vessels in the legs, so as to allow a more generous flow of blood to that region. Plaintiff's symptoms were much relieved at that time. The examination of October 1968, reported in Exhibit B, indicated that the symptoms were returning and found in the arms as well as the legs. The conclusion was that plaintiff had "mild symptoms of small vessel disease," alleviated by the sympathectomy and by vasodilator drugs, that he had been able to perform well in sedentary positions, but would be unable to perform functions involving moderate to strenuous exercise. The PEB (Ex. D) adds that all his extremities are aggravated by change in temperature, and that the insufficiency is arterial. The defect was considered to preclude worldwide service.

While properly repudiating defendant's effort to make plaintiff appear as a malingerer exploiting his ailments, the court, no doubt unconsciously, plays the same game. The reader should be assured, contrary to the court's innuendo, it was not a question of athletes foot or ingrowing toenail.

Turning now to the *Allen* case, I will start by revealing that we did not have the benefit of the legislative history the defendant now puts before the court, and the court before the world. If we had, the case would not have appeared as easy and obvious as, to the majority, it did. It is a consolation that the able dissent was apparently written in ignorance of it, too. I do not think there was neglect on defendant's side. I think defendant mistrusted its own ammunition. A clue as to the reason for mistrust is afforded in the Senate committee statement the court quotes, dealing with the situation of one supposed to be in plaintiff's position, *i. e.*, he cannot meet military standards of fitness, but is not qualified for a civilian annuity because he is not totally disabled. The Senate report says, if he does not meet civil service age and length of service requirements—

\* \* \* *[H]e would not be retired for physical disability under the Civil Service Act, but would be separated from service with civilian severance pay.* [Emphasis supplied.]

I asked defendant's able counsel during oral argument, what severance pay this referred to. We are of course familiar with severance pay in the military, but I had never heard of anyone getting severance pay under the "Civil Service Act" (which I suppose means the entire mass of laws relating to the Civil Service). Counsel's astounding response was that it meant refund of the money the employee had paid into the retirement system. I call it an astounding

response, because I have been familiar over many years with persons (including myself) withdrawing money paid into the Civil Service retirement system, when permitted, but I have never heard it called severance pay, though it is true it can be done only on severance. It is not exactly pay. It is the severed employee's own money. He paid income taxes on it when it was withheld. What makes it a cruel joke in Polos' case is that he, as a state employee, paid nothing into the U.S. Civil Service retirement fund, so of course could draw nothing out. His "severance pay" by defendant's semantics, is nothing.

We, or a majority of us, learned in *Hart v. United States*, 585 F.2d 1025, 218 Ct.Cl. —— (1978) to mistrust congressional committee reports containing obvious misstatements about the meaning and operation of the statute to be construed. With all respect to defendant's counsel, his explanation of the Senate Committee's (or more likely its staff's) use of the words "severance pay" simply will not wash. The Congress certainly would have wanted to. be assured it was not dropping anyone through the crack, and this patently false statement undertook to supply that assurance, and is material.

The House, as recounted in [1968] 3 U.S. Code Cong. & Admin.News, p. 3318, adopted the Senate bill and passed it only a week after the Senate. Meanwhile, the House Committee on Armed Services made its report and that is published, instead of the Senate Committee's according to the above publication's frequent practice. This House report can be searched end to end and the language the court quotes from the Senate (unpublished) report can nowhere be found, verbatim or in paraphrase. There is none of it, no effort to show how a partially disabled technician would fare. The court labors in its fn. 10 to establish that this unusual fact reflects no discredit on the Senate legislative history as demonstrating the meaning of the statute to be construed. Certainly, when one body of Congress adopts a bill passed by the other, normally, without thought of any charge of plagiarism, its committee reports in the same

language as its predecessor in consideration of the bill. If omission to do this is grounds for speculation in any case, the matter becomes too clear to be called speculative when the language of the prior committee, not used by the subsequent one, contains a glaring error. We think the House committee, and therefore the House, meant to leave it to the Civil Service Commission and the courts to determine how a partially disabled technician would fare as to civilian annuities. If the Senate intended to be understood as legislating in this matter, it should have stated the effect of the bill, as to it, in supportable terms. I conclude that the weapon of legislative history drops from defendant's hands, who picked it up and wielded it reluctantly in any case. We must approach the problem, as the panel did in *Allen*, by construing the cold statutory language without extrinsic aids.

The proposition here is very simple. The court quotes all the pertinent provisions. 5 U.S.C. § 8331(6) defines "disabled" and "disability" as meaning "totally disabled, or total disability, respectively, for useful and efficient service in the grade or class of position last occupied by the employee * * *." Thus as an abstract proposition, it seems clear that one "totally disabled" under the statute might be only "partially disabled" in ordinary speech. The language reflected the fact that the Civil Service, unlike the military, utterly lacked facilities to rotate people around among different jobs. Accordingly, when it was ascertained that the applicant for annuity was disabled for the job he actually held, whether he might perform usefully in any other was not for consideration. An Air Traffic Controller might be "totally disabled" if he lacked 20/20 vision, if that was a requirement of the specific job occupied, and a fire fighter might be "totally disabled" if he suffered from emphysema, making it unsafe for him to breathe smoke. Yet either man might not be "totally disabled" if holding the other's job. The reader will realize these are fictitious examples as I have not investigated what the regulations actually prescribe for these two jobs. We tried to

get a clear definition of the "grade or class of position" occupied by Polos in the U.S. Civil Service or that he would have occupied when released from military duty, but for his physical problems. Defendant says that if employed today he would be a GS–085–7, a "Security Specialist," in the "Security Police Division of TAC, MAC, and various nonflying units," according to the position description (PD). The PD contains no specific physical requirements, and I conclude that is typical. His qualifications as stated include, as the law requires, that he must be "assigned to a compatible military position within the unit of employment." I take it that for most Civil Service jobs, the PD does not prescribe any specific physical standards, and it is understandable why not, for one attempting to prescribe such standards would probably run foul of one or another of the various provisions of laws that outlaw so many different varieties of discrimination. The usual situation therefore is and has to be that the government doctors have to determine in each individual case whether the annuity applicant is disabled to perform the duties of the job as the doctors understand them to be.

In the case of a National Guard technician, the *Allen* decision construed the job qualification that he had to be a member of a National Guard unit, as a physical qualification that he had to satisfy military fitness standards. I do not see anything contrary to literal statutory language in this, nor is it an absurd result. Defendant and the court wring their hands over the alleged injustice of allowing National Guard technicians to retire for partial disability while other civil servants can retire, if not for longevity, only for total disability. I have already shown that this is a semantic and not a real distinction, resulting from the language of the statute which defines partial disability as total disability. We hear of instances every day of civil servants retiring for alleged total disability and stepping into lucrative other employment the next day. Mr. Polos is in reality totally physically disqualified to be a National Guard technician, just as much as a lame chief of police may be totally physically disqualified to be chief of police. Probably more so, for he is 60 percent disabled by the military system, while the civil service system is tolerant very often to a degree of disablement really less than that. In either case, what other job the man could hold is neither here nor there. The court has by a disingenuous fact statement blinded itself to the nature of Mr. Polos' ailments, which any doctor would take seriously, respecting the incumbent of any job, and by an airy structure of semantics it has also blinded itself to the reality, which is that Mr. Polos, by reason of grave cardiovascular problems, can no longer be a National Guard technician, his life's work during almost his entire adult span, hitherto.

As regards the finality language of 5 U.S.C. § 8347(c), it has never received so much respect in this court before. In *Scroggins v. United States*, 397 F.2d 295, 297, 184 Ct.Cl. 530, 534, *cert. denied*, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968), we said that despite it a court could set aside a Commission determination where it involved a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination. The Commission was, in the *Allen* case, and is here, committing a misconstruction of the National Guard Technicians Act, depriving Allen and Polos of important substantive rights. It is in my view the legal duty of the Commission to recognize that Mr. Polos' cardiovascular difficulties disqualify him from service on military active duty, and therefore to be a civilian technician when his unit is deactivated, and therefore he can no longer satisfy a physical requirement of his specific job, just as in the supposed case of the Air Traffic Controller who loses his 20/20 vision. He is "totally disabled" by the special semantics of the Civil Service laws.

I can't help but believe that Polos' case would have fared better with the court if the issues involved had come before us 20 years earlier than they did. We are drifting into a hostile and technical attitude towards federal employees' claims that re-

flects, of course, what we currently read in the newspapers, and would have astonished our predecessors. I would favor hewing to the old line and expecting that, like the South, the mud-targeted civil servant will rise again.

I dissent.