Evie Sue **MOODY**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 336–81C.

United States Claims Court.

Sept. 15, 1986.

Jack F. Gardner, Southfield, Mich., for plaintiff.

Robert A. Reutershan, with whom was Asst. Atty. Gen. J. Paul McGrath, Wash., D.C., for defendant; Elizabeth D. Dyson and Thomas J. Fieney, of counsel.

## OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

SMITH, Chief Judge.

At issue in this case is a decision of the Merit Systems Protection Board (the "MSPB") which upheld an Office of Personnel Management (the "OPM") decision denying the plaintiff disability retirement benefits.[1] The MSPB found that the evidence presented did not establish that the plaintiff was totally disabled within the meaning of the relevant regulations, and it therefore disallowed her claim for disability retirement. The plaintiff challenges the MSPB disallowance.

The case is before the court on cross-motions for summary judgment. This opinion elaborates upon an oral ruling given by the court at the close of argument on those cross-motions. That ruling was based upon consideration of the record, the parties' submissions, including the administrative record, and oral argument. We deny the plaintiff's motion for summary judgment and grant the defendant's cross-motion.

### Facts

The plaintiff is a former employee of the Army's Tank Automotive Materiel Readiness Command ("TARCOM") in Warren, Michigan. On May 6, 1977, she experienced bleeding from her ears and nose caused by high blood pressure. This is a condition known as hypertension. As a result, she spent the next 10 days in a hospital and was released on May 16, 1977. The plaintiff returned to work until May 8, 1978, when she had a recurrence of the bleeding. Again she was hospitalized. During this stay, she filed, on May 9, 1978, an application for disability retirement with the OPM. On June 2, 1978, she submitted, in support of the application, a doctor's opinion that she was totally disabled.

On October 18, 1978, the OPM rejected the plaintiff's application because "total disability for useful and efficient service in [her] position is not shown." Following this denial, the plaintiff requested, on November 8, 1978, that the rejection of her application be reconsidered by the OPM. She also submitted, in support of her application, two additional doctors' statements which concluded that she was totally disabled. Further, the plaintiff indicated to the retirement division that she was available for examination by a doctor of the government's choice.

The OPM again determined that the medical data submitted by the plaintiff did not indicate that she was totally unable to perform her duties. Thus, on January 15, 1979, the plaintiff was sent a letter affirming the denial of her application. She was also notified in that letter of her right to appeal the denial of her application to the MSPB.

The plaintiff thereafter filed an appeal with the MSPB on January 23, 1979, and a hearing was scheduled for May 31, 1979. By letter to the MSPB, the OPM advised that its decision be upheld since the plaintiff did not include within her appeal any medical information that had not been submitted to the OPM. The plaintiff was provided a copy of the OPM's recommendation letter to the MSPB and was given an opportunity to comment on it. Prior to her hearing, the plaintiff sent another doctor's report to be considered by the MSPB along with those already in the OPM record. This report suggested that it would be harmful to the plaintiff to return to work. The hearing was held on May 31, 1979, and

---

1. The United States Claims Court has jurisdiction over the instant suit since this case concerns an appeal from a final decision of the MSPB involving events prior to January 11, 1979, and thus, is governed by prior law rather than the Civil Service Reform Act of 1978, Pub.L. No. 95–454, § 902, 92 Stat. 1111, 1224 (1978). *See Allsbrook v. United States,* 1 Cl.Ct. 194, 195 n. 1 (1982). The MSPB's decisions involving events occurring after January 11, 1979, must be appealed to the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(b)(1) (1982).

the MSPB issued its decision upholding the OPM on September 19, 1979.

The plaintiff, also on January 23, 1979, requested by letter to the TARCOM that she be placed in immediate employment status. On February 8, 1979, her request to return to work was denied.

The plaintiff, on September 24, 1979, requested that the MSPB reconsider its hearing examiner's decision. Plaintiff also requested, on September 24, 1979, an examination for fitness for duty by the TARCOM. The MSPB sought the advice of the OPM which again advised that there was no medical reason upon which to base reconsideration of the MSPB decision. A copy of this letter from the OPM was sent to the plaintiff for comment. The plaintiff submitted the opinions of two more doctors in support of her request. These reports suggested that the plaintiff avoid all stressful situations at work. The request for reconsideration was denied by the MSPB on January 28, 1980.

The plaintiff, on October 31, 1979, was requested by TARCOM to report to work on November 5, 1979. Plaintiff reported to duty but was informed that to return her to work within the Recruitment and Placement Branch could cause serious health repercussions. Plaintiff was instructed to return home.

The plaintiff filed a civil action seeking review of the MSPB decision in the United States District Court for the Eastern District of Michigan. *Moody v. United States,* No. 80–72415 (E.D.Mich. filed July 8, 1980). The case was transferred to the Court of Claims upon the district court's ruling that sole jurisdiction for a review of the MSPB decision is under the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491 (1982). *Moody v. United States,* No. 80–72415 (E.D.Mich. Apr. 29, 1981).

### Discussion

The court's scope of review in civil service disability cases is limited to a determination of whether "there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going

to the heart of the administrative determination." *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 105 S.Ct. 1620, 1628, 84 L.Ed.2d 674 (1985), *quoting Scroggins v. United States,* 184 Ct.Cl. 530, 534, 397 F.2d 295, 297, *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968).

The plaintiff asks the court to find that the MSPB erroneously ruled against her disability claim, that the affidavits of three doctors declaring that she was disabled were sufficient to establish total disability, and that the TARCOM refusal to return her to her position weighs heavily in her favor. The plaintiff asks us not only to look at the administrative procedures, but also to review the factual underpinnings of the MSPB's determination. The latter we cannot do. *Lindahl v. Office of Personnel Management,* 776 F.2d 276, 277 (Fed.Cir. 1985); *Polos v. United States,* 223 Ct.Cl. 547, 621 F.2d 385 (1980); *Scroggins v. United States,* 184 Ct.Cl. 530, 397 F.2d 295.

It was necessary for the MSPB to determine if the plaintiff fulfilled the requirements of the disability standards in order to have her claim granted; it is incumbent on this court to determine if the MSPB met its administrative mandate in reviewing the claim.

The plaintiff contends that the decision to deny disability retirement was erroneous. As part of that contention, the plaintiff claims that she supplied sufficient medical evidence for a determination of disability in her favor and that she was willing to submit to a medical examination by a physician of the OPM's choosing. The record establishes that the plaintiff's claim has been reviewed *four* times. In each of those reviews, the medical testimony was examined by the appropriate boards and panels and each was able to render its determination based upon that evidence.

Although 5 U.S.C. § 8347(c) (1982) provides for medical examinations, the provision is clearly optional and may be invoked only when the OPM deems it necessary to

determine disability.[2] Here, the OPM's reliance upon the medical evidence of the plaintiff's own doctors rather than requiring her to submit to that agency's medical choice cannot be said to have prejudiced her or denied her any procedural rights. Indeed, the contrary was the case. The statutory provision is for the government's benefit, since it must be assumed that the medical evidence submitted by the claimant will certainly be at least as favorable to her claim as that coming from an OPM-chosen doctor. Therefore, this action or non-action by the OPM cannot be the basis of a procedural reversal of the decision by the administrative process below.

This court does not have, nor should it have, the authority to examine the substance of a decision which has been shown to have been made within the applicable statutory framework with adequate evidence and where there is no indication of "a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination" within the contemplation of *Lindahl*, 105 S.Ct. 1620.[3]

█ The plaintiff also raises a second issue which needs to be addressed briefly. Is there a denial of due process when an employee has been denied access to work because of a physical inability and yet the same individual has also been denied disability benefits? Is "too sick to work" equal to "sick enough to be disabled?"[4]

This seemingly "catch–22" situation appears to demonstrate an inconsistency in the law. However, when we look to the case law and statute, we find no mandate to impose a totally unified determination. In fact, the dual determinations were de-

signed to address separate problems: (1) what physical infirmities will keep one from performing one's job and (2) what are the requirements for receiving retirement benefits based upon disability. The former can be caused by far less than 100 percent impairment and varies greatly with various jobs, while the latter requires a full 100 percent disability for the viability of the disability retirement system. Congress has determined that effective and efficient work may be jeopardized by one level of disability, *see* 5 U.S.C. § 8331, but a more formidable standard must be met before an employee may collect retirement monies based upon a disability. *See Polos v. United States*, 223 Ct.Cl. 547, 621 F.2d 385 (1980); *Fancher v. United States*, 218 Ct.Cl. 504, 588 F.2d 803 (1978); *Piccone v. United States*, 186 Ct.Cl. 752, 407 F.2d 866 (1969).

It is not a court's task to judge whether this is a compassionate or an ultimately just system. That is a task for the American people and the congress they elect to represent them. The court must, however, determine whether it meets the mandates of due process and is consistent with the statutory scheme under which the plaintiff brings this claim.

As to whether the disability system meets the mandates of due process, the court must answer yes. The statutory scheme will only violate due process if it serves no rational state interest. *See Hodel v. Indiana*, 452 U.S. 314, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981); *Schweiker v. Wilson*, 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1980). Here, that is clearly not the case. The different standards complained of serve different functions. *See* 5 U.S.C. § 8337; 5 C.F.R. § 754.101 (1986). Both functions, providing for a federal

---

**2.** 5 U.S.C. § 8347(c) provides in pertinent part that the "[OPM] *may* direct at any time such medical or other examinations as it considers necessary to determine the facts concerning disability...." (Emphasis added.)

**3.** Amendments of December 5, 1980, provided for judicial review of disability decisions involving the mental condition of the employee. *See* 5 U.S.C. § 8347(c), (d).

**4.** The Federal Circuit made reference to the tension inherent in that apparent inconsistency and made note of its disturbance over it in *Lindahl v. Office of Personnel Management*, 776 F.2d at 280. However, since the issue was not properly before that court, it left its resolution for another time.

work force that can effectively do its job and also providing an important worker benefit to retain high quality employees in a competitive job market, are legitimate and most important governmental objectives. The standards used in this case to achieve in a balanced way both goals are certainly directly and rationally related to the achievement of those goals.

While this court's sympathy for an ill claimant, as well as its desire for a more symmetrical governmental system, are very real, they are not a proper basis for a judicial decision. It should also be noted that the record is not entirely clear on why the plaintiff was refused readmission to her job. The evidence plaintiff presented at her administrative appeals leads to the inference that her supervisors were only accepting her own disability claims at face value [5] and, thus, were unwilling to take responsibility for her injury or death if they allowed her to return to work. This makes their actions, even if we accepted the plaintiff's theory, far less inconsistent with the determination of no disability than would appear at first sight. In any event, however, the dual standards clearly pass due process muster and are consistent with the statutory scheme under which both standards operate, and have operated for 20 years. Pub.L. 89–554, 80 Stat. 583 (1966).

### Conclusion

The plaintiff's motion for summary judgment is denied. The defendant's cross-motion for summary judgment is granted. The clerk is directed to dismiss the complaint. No costs.

5. See letter dated March 4, 1980, from James H. Long, Chief, Recruitment and Placement Branch advising the plaintiff of the Army's intention to separate her from her position as a Personnel Staffing Specialist due to her "inability to meet the physical requirements of the position."